CHRISTINA RABASSA, complainant-appellant,

*v.*

CHARLOTTE M. RAAB, defendant-respondent.

[Decided September 28th, 1923.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Backes, who delivered the following opinion orally:

"The complainant gave to her mother, the defendant, a deed for a house adjoining the mother's home, in Jersey City, which the mother has since made a part of her home by cutting away partition walls. The daughter had been then recently widowed, and was well to do from her deceased husband's estate. That was in 1915. She again married, and in 1921 filed this bill. After all these years, she now claims that the deed was given upon her mother's representation that it was a trust deed—that is, a deed showing on its face

a trust to reconvey. She also claims that her mother de-
cleared the trust in writing, which, she says, is now lost. She
further claims that she never acknowledged the deed and
that the certificate of acknowledgment is false. She asks
that the deed be set aside or that the trust be enforced. The
mother says that she had advanced money to her daughter
from time to time, and that the deed was given in settlement
and satisfaction of the debt. It would be futile to attempt
to reconcile the testimony. The fight is such a bitter one, as
it always is in family quarrels, that I am afraid some of the
witnesses did not stop short of perjury. But we have little
trouble in reaching a correct conclusion where the testimony
is in such conflict if we keep before us the rule that the
burden is on the complainant to prove her case by a pre-
ponderance of the evidence, and in this the complainant has
failed, as I shall point out.

"The charge that the deed was obtained by the mother
upon the representation that it was a trust deed—that is,
that the deed on its face was to the mother in trust for the
daughter, and that the daughter so understood it, and in
that belief made it, is not made out. It is quite apparent
that the daughter knew it was an absolute conveyance. That
is borne out by the daughter's own statement, if believed, for
she says the deed was made for the purpose of thwarting her
counsel in New York—thwarting his threatened effort to
recover from her for professional services. Now, if she was
truthful in that statement, then she knew, or must have
known, that the conveyance was absolute, to hide the prop-
erty in her mother's name. It also appears, from her testi-
mony, that when she discussed the deed with her since hus-
band at White Sulphur Springs, if she ever did, they con-
sidered the advisability of conveying the property abso-
lutely to the mother. In this connection let me say that I
am not inclined to accept the daughter's story that her
motive for making the deed was to foil her New York law-
yer. I think that is a matter that suggested itself to her
as a plausible explanation for the making of the deed and

charging her mother as trustee; for if she had hoped to avoid the importunities of this lawyer, why should she simply try to protect this bit of property that stood her in not more than $1,700, when in fact she had property worth at least $7,000 in New York, where the lawyer practiced, and of which he had knowledge, and which he could more readily lay his hands on.

"As to the claim that the trust was declared in writing by the mother, and is now lost, this will be presently disposed of. As to the fact of its existence, I may say here that, if there ever was a document such as the complainant described, it did not comply with the statute of frauds.

"Now let us take up the charge that the deed was never acknowledged and that the certificate of acknowledgment is false and the recording of the deed fraudulent. The conclusion I arrive at also disposes of the question of the existence of the so-called declaration of trust. The deed bears date June 16th. The complainant says that on that day— and so does her husband—she was in White Sulphur Springs; that they left here on the evening of the 15th. A communication from the hotel, which I directed counsel to procure, and which has been admitted in evidence as stating the fact, discloses that the complainant and her husband—he was not then her husband—arrived at White Sulphur Springs on the 16th day of June, 1915, some time after dinner. I take that to be so, and being so, it is not possible that she could have been in this neighborhood. It is a fourteen-hour trip by through train. The complainant says, and she is corroborated by her husband, that the deed came to her by mail June 17th, and that enclosed with the deed was the declaration of trust such as she has described; that after discussing the advisability of signing it and expressing some anxiety about doing so, she signed the deed and returned it to her mother by mail. She also testifies, without reservation, that she did not sign the deed or acknowledge it before the commissioner. On the other hand, the commissioner, who is a reputable real estate agent in Jersey City, and who

17

is entirely disinterested in the outcome of the suit, says that
the deed was acknowledged by her, after execution in his
presence, on the afternoon of June 16th about four o'clock.
I believe the commissioner as to the fact of the execution
and the acknowledgment, but he is wrong as to the date.
There was no impersonation.    The complainant is not a
stranger to the commissioner.    He has known her and her
family for twenty-five years.    His office is right around the
corner from their home.    He says that the complainant came
to him with her old deed and asked him to draw a new one
to her mother; that he made pencil memorandum of her
instructions on the back of the old deed, and so it appears;
that an appointment was made for the 16th for the exe-
cution and that she told him she was going away—I
do not recall whether he said that she told him
she was going to White Sulphur Springs.    At any
rate, she told him she was leaving.    The complain-
ant also brought with her certificates of shares in
the building loan which she also wanted transferred to her
mother.    The building loan held a mortgage on the prop-
erty.    The old deed and shares were handed by the commis-
sioner to a lawyer, who drew the deed and assignment of the
shares, which assignment also bears date June 16th.    Both
documents, including the dates, were typewritten.    Now,
this is what I think happened: the scrivener inserted the
dates, June 16th, in the deed, in the certificate and in the
assignment of the shares at the time he drew them to comply
with the date appointed for their execution, but the com-
plainant called a day or two before the appointed time and
the commissioner certified without changing the date, which
is not an uncommon thing.    I have not the slightest doubt
that the complainant procured the drafting of the deed and
that she appeared before the commissioner and executed and
acknowledged it, and that she was fully aware of what she
was doing, and this, of course, carries with it my disbelief in
the story of the complainant and her husband that the deed
was signed at White Sulphur Springs.

"It has been argued that there is legal fraud, as distinguished from actual fraud, in that it is urged the mother occupied a dominant position towards the daughter. Rather the contrary is the fact. The mother was a housewife; the daughter, a young woman, twenty-five, a widow, and worked from early childhood; had been engaged in business with her former husband; at the time of the conveyance was carrying on the business left to her by him; one that required skill and knowledge of business methods; she had traveled extensively; had come in contact with all kinds of trades people, and was absolutely independent—self-dependent; she did not live with her mother and was not of her household. There was no relation of trust and confidence such as to raise a presumption of fraud.

"Then again we have this situation, which also strengthens the mother's position and weakens that of the dauhgter. Why, if this was simply a deed of trust, did the daughter permit the mother to incorporate the property into her home—make it a part of it, and occupy it for all these years, and why, during that same time, did she let the mother pay the monthly installments to the building loan until the mortgage is now nearly paid off, or is paid off? The mother paid the taxes and repairs. It seems to me if the property was simply held in trust there would have been some arrangement made by which these obligations were to be discharged, but nothing of that kind appears. The daughter delivered the deed and the possession of the property and permitted her mother to handle it as her own.

"The testimony of the mother that she bought the property by advances made to her daughter is not any too satisfying. It would seem that these advances were made at times when the daughter was in funds, but we need not scrutinize it closely, for the complainant must rest upon the strength of her own case and not upon the weakness of that of her mother.

"The complainant has failed to sustain her cause and the bill will be dismissed."

*Mr. John P. Manning,* for the appellant.

*Messrs. Aulenreith & Gannon,* for the respondent.

PER CURIAM.

The decree will be affirmed, for the reasons stated in the opinion delivered by Vice-Chancellor Backes in the court of chancery.

*For affirmance* — THE CHIEF-JUSTICE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZEN-BACH, WHITE, HEPPENHEIMER, GARDNER, VAN BUSKIRK—12.

*For reversal*—None.