The defendant, a spinster now upward of fifty-seven years of age, was the only daughter of Henry Afflerbach and his wife, who resided for many years in Atlantic City. He was in the stationery business. After the wife's death, which occurred in 1900, he purchased a property known as No. 14 South California avenue, and caused the title to be placed in the defendant.
Shortly after the purchase of this property he and his daughter moved into it, where he remained until his death. Complainant, then a single woman, also lived with the father and daughter in the property in question. She received wages at the rate of $8 per week. About a month before the death of Mr. Afflerbach, Mr. Dehn (father of complainant), *Page 391 
his wife and five children came to the house, and he assisted in the nursing and care of the father. (This was done as a friendly act and not for hire.) The families had been on friendly relations, and the defendant testified she looked to him (Dehn) like a father.
By Afflerbach's will, a trust was created in favor of the defendant for her life. He also provided that should the complainant be living at the death of his daughter, and should have resided and made her home with the daughter at the time of her decease, she should receive $5,000. In the event that Carrie Dehn should be married or not be residing or making her home with his daughter at the time of her death, the said $5,000 should become part of the residuary estate.
After the death of Afflerbach, the Dehn family remained at the home of Miss Afflerbach, and about three weeks thereafter Dehn suggested that "it would be nice if I would will it to his daughter, that she gets it after my death," and it was decided that Mr. Dehn should arrange with Mr. Robert E. Stephany, then a practicing attorney of this state, and who has since died, to attend to the business. In pursuance of such arrangements and understanding that she was to have a will drawn, Miss Afflerbach called at the office of Mr. Stephany and "signed a paper."
Miss Afflerbach insists that she understood she was "signing a will that Carrie Page gets the property after my death." In fact, she signed a deed to Albert C. Stephany (a brother of Robert E., the scrivener), and he in turn conveyed the premises to the defendant and complainant as joint tenants and not as tenants in common.
Some time later the defendant received the deeds from Albert C. Stephany (they having been recorded in the meantime) and placed them first in a trunk, and later in a box at a bank. These papers were kept either in the trunk (or in a dress suit case when away from home) or in the bank.
Mr. Dehn lived in the premises in question, with defendant, until the time of his death in 1916. Carrie Dehn, the complainant, resided there until 1906, when she married and left.
The defendant paid all taxes, sewerage and water rents, fire insurance, paving and papering upon the premises. *Page 392 
The defendant testifies she never knew that Carrie Dehn claimed to have any interest in the property until about six years ago, when she endeavored to make sale of it, and was informed by a real estate agent that it would be necessary to have the complainant's signature to pass title.
To establish a "gift inter vivos" the following factors must appear: First, a donative intention on the part of the donor;second, delivery of the subject-matter of the gift in the manner in which delivery is most capable; third, the donor must strip himself of all ownership and dominion over the subject-matter of the gift. Mullen v. Mullins,130 Atl. Rep. 628; Swayze v. Huntington, 82 N.J. Eq. 127; affirmed, 83 N.J. Eq. 335.
Upon considering all the evidence concerning this transaction, I cannot find an intention on the part of Miss Afflerbach, at the time of the execution of the deed in question, to give any interest in the property immediately and irrevocably to the complainant, nor can I find that the sending of the deed for record by Mr. Stephany, and the delivery thereof when returned after the recording, by him to Miss Afflerbach, is proof of delivery thereof to the complainant. Nor has the donor stripped herself of any ownership and dominion over the property itself.
As stated in the oral memorandum, "I have no doubt * * * that no matter what the form of these papers may be, they were not meant to be effective until the death of Miss Afflerbach."
The bill prays for partition of the premises described therein. The counter-claim prays that it may be decreed that the complainants have no estate in said land, and that the deeds to any by Albert C. Stephany be set aside and canceled.
I will advise that the bill be dismissed and that the defendant be granted the relief prayed for. *Page 393