The administrator of the estate of Mrs. Ida F. Dill, deceased, prays that an assignment of a mortgage made by her to her grandson, the defendant Daniel M. Dill, be set aside.
Daniel, who was born about 1901, was taken to live with his grandparents when three or four years old and he continued to live with them and, after his grandfather's death in 1911, with his grandmother until 1923. In that year he was admitted to the bar and obtained employment with the Prudential *Page 375 
Insurance Company. About the same time, he left his grandmother's home and took a room in the neighborhood but he continued to have breakfast with his grandmother and frequently dinner. This arrangement continued until 1930, when he was discharged by his employer and returned to his grandmother's home. Mrs. Dill died in 1933 at the age of eighty-five.
The assignment bears date September 30th, 1926, but it was not actually executed until February 23d 1928. On both of these dates there were living with Mrs. Dill two daughters, a son and his wife. Another son generally lived with his mother but was away from 1926 to 1928.
Defendant testified that his grandmother told him that she would give him the mortgage if he would keep quiet about it; that she feared a row if the family should learn of the gift. He prepared the assignment in 1926 but it was not signed for over a year. About a week before the execution of the assignment, she gave him the bond and mortgage. The day after the assignment, he took it to the register's office for recording and gave back the bond and mortgage to his grandmother for safekeeping as he was on the point of sailing for Europe. After his return, he asked for the bond and mortgage on several occasions and his grandmother said she would get them for him but she never did so.
The actual execution of the assignment appears from the testimony of the attorney who took the acknowledgement and who was a friend of defendant employed by the Prudential. At the close of work on February 23d 1928, he went with defendant to Mrs. Dill's home. She opened the front door and they entered. Defendant took the assignment out of his pocket and handed it to his grandmother, saying, "this is the assignment." She took her time to read it and then signed. The attorney made known the contents thereof to her and she acknowledged execution. There was no other conversation on the subject and no advice given to Mrs. Dill.
From that time until her death, Mrs. Dill continued to collect the interest on the mortgage, just as if she were still the owner of the mortgage. Defendant never attempted to *Page 376 
collect the interest. His occasional efforts to persude Mrs. Dill to pay over to him some part of the interest when he was in especial need of money, led to quarrels between them. The transaction was kept secret from the other members of the family.
Complainant attacks the assignment on the ground that it was procured by fraud and undue influence, that Mrs. Dill had no independent advice and that she did not intend to make a gift. In support of his position, he offered proof of letters written by Mrs. Dill and statements made by her after the assignment in which she said she owned the mortgage. Ruling on objections to these proofs was reserved.
Complainant is the representative of Mrs. Dill. Her statements, whether written or oral, offered by him are self-serving declarations. Such declarations subsequent to the date of the assignment, are incompetent to show fraud or otherwise to invalidate the title of the assignee. Boylan v. Meeker,28 N.J. Law 274; Speer v. Speer, 14 N.J. Eq. 240; Veader v.Veader, 89 N.J. Law 399. Complainant relies on Lindsley v.McGrath, 62 N.J. Eq. 478, and Kelly v. Pitney,98 N.J. Law 773, in which, however, the declarations were contemporaneous with the act in question and tended to show the intent of the actor at the time. In First National Bank v. Rutherford TrustCo., 109 N.J. Eq. 265, the question was whether deceased had given to S a savings bank passbook the day before his death. The court held that deceased's antecedent letters showing dislike for S were admissible to disprove the gift. None of these cases support defendant's position.
A case more nearly in point is Skillman v. Wiegand, 54 N.J. Eq. 198,
in which the owner of a savings bank account had caused his daughter's name to be inserted in the account with his own so as to make it a joint account. Vice-Chancellor Pitney said that, "the courts look at the circumstances and declarations of the creator of the joint estate, made both before and after its creation, in order to determine whether it was made in trust for the creator or as a gift with right of survivorship." All the cases which he cited relate to joint *Page 377 
bank accounts or other joint estates. I think the rule — or rather the exception — is limited to joint estates and does not apply to the instant case.
The assignment to defendant is voidable if there was any deception, undue influence, unfairness or coercion, or if the transaction was not thoroughly understood by Mrs. Dill. If there was a confidential relationship between Mrs. Dill and defendant, and the latter was the dominant party, then he has the burden of proof on all the points which I have mentioned. But if it is not shown that defendant was the dominant party in such a relationship, then the presumption is in favor of the assignment and complainant has the burden of proving circumstances which make it voidable. In re Fulper, 99 N.J. Eq. 293.
Mrs. Dill, at the time of the transaction, was eighty-years old and defendant was twenty-seven. He was an attorney-at-law and she, a woman without any particular business experience. Her health, however, both physical and mental, was excellent. She did the cooking for the household and handled the family business. Indeed, four years later when she was somewhat enfeebled, she was fully competent, according to complainant, to execute a rather complicated contract with him.
Mrs. Dill was not, in any sense, dependent on her grandson. She did not live in the same house with him but lived with four other members of her family. He did not contribute to her support. On the other hand, it appears that testatrix and defendant were very fond of each other and that he was the only member of her family who expressed any great affection for her. Her sons, or some of them, apparently had little regard for their mother and gave her little aid or comfort.
The evidence does not establish that defendant occupied a dominant position in relation to his grandmother and so the burden of proof remains with complainant in his attack upon the assignment.
There is no direct proof of fraud or imposition. The only circumstance pointing in this direction is the secrecy surrounding the transaction, and this, I think, is sufficiently *Page 378 
explained. If complainant or his brother had been told that their mother contemplated giving the mortgage to their nephew or that she had done so, there would have been an immediate quarrel.
There remains the question whether Mrs. Dill intended, in 1926, to make an immediate gift of the mortgage or whether she intended to make a gift effective only upon her death. The facts that she continued to collect the interest for five years and to use it as her own and that defendant never attempted to collect it, is not inconsistent with a present gift but only indicates that the donor reserved to herself the income during her lifetime.Mullen v. Mullins, 98 N.J. Eq. 728. The plain language of the assignment must prevail. Let there be a decree for defendant.