The complainant, Annie Kisterbock Pabst, is administratrix and a daughter of William H. Kisterbock, who died on *Page 452 
January 17th, 1934, intestate, leaving him surviving as his next of kin and heirs-at-law his widow, Ida Y. Kisterbock, who was his second wife, and two children, the complainant, Annie Kisterbock Pabst, and the defendant Helen K. Haman, who were daughters by his first wife. Mr. Kisterbock died a resident of Atlantic City and letters of administration were granted to complainant by the surrogate of Atlantic county on February 10th, 1934. The decedent at the time of his death was eighty-one years old and died of angina pectoris. For a number of years prior to his death he had hardened arteries and suffered at times from severe headaches and had other ailments incident to old age, but from the testimony of his physician who examined him periodically for a number of years, his physical condition was quite good and he was normal mentally while exhibiting some eccentricities. He looked after his business affairs which had relation to collection of his income and making of investments. He was the recipient of an income from two trust funds which yielded him about $6,000 a year. He was a man who had never been engaged in any profession or business and was reputed to have considerable wealth prior to his death.
The bill was filed for the purpose of setting aside certain transfers of his personal estate made to Mrs. Haman, as well as the reconveyance of certain real estate either conveyed to her by the decedent or at his instance, which transfers and conveyances are alleged by Mrs. Haman to be gifts inter vivos by the decedent to her. A great many transactions are involved, covering a period from 1922 to 1932, almost up to the time of the death of decedent. In these transactions were included real estate, bonds and mortgages, promissory notes, cash on deposit in a savings fund society, and various loans made by the decedent to Mrs. Haman from time to time, said to aggregate $30,000. At the time of decedent's death the tangible property which was found by complainant consisted of a note given by one Davenport of $1,000, a note by one Abrams of $600, a loan to defendant of $110, bank account in Fidelity-Philadelphia Trust of $3,194.66, and accrued income on trust funds of $2,900, making the approximate *Page 453 
total of $7,800. Complainant found that the rest of decedent's estate from which he had received all of the income during his lifetime was claimed by the defendant by reason of his alleged gifts to her and was said to aggregate $74,000, consisting of several mortgages, some real estate, notes and an account in the Western Savings Fund of Philadelphia. Mrs. Haman, at the time of decedent's death, held a check on Fidelity-Philadelphia Trust Company signed by decedent, drawn in blank, and given to her for the purpose of drawing out the bank account with the exception of $100. It is not contended by Mrs. Haman that any consideration was paid by her to decedent for the property which was transferred to her and the facts show that no consideration was paid.
The decedent and his wife went to live with Mrs. Haman in 1921 at her home in an apartment, 275 South Connecticut avenue, Atlantic City, where they occupied a bedroom and had the use of the apartment. In 1922, Mrs. Haman moved to Cordova Apartments where the Kisterbocks had a bedroom and the use of the apartment. During the next five years decedent and his wife spent about ten months in each year with Mrs. Haman at these apartments. Afterwards, decedent and his wife went to live at the Lafayette Hotel for five years and in 1932 they rented an apartment in the Barclay Court Apartments where they continued to reside until decedent's death in 1934. During part of the time when they were living with Mrs. Haman, they occasionally returned to their house in Merchantville and for several summers they were at a camp in Canada which Mrs. Haman had purchased.
The testimony disclosed that Mrs. Haman, as early as 1919, commenced borrowing money from her father, which loans were evidenced by her promissory notes, which were held in decedent's possession. The testimony failed to establish the number, dates and amounts of these notes, although it would indicate that the total of them approximated $30,000. These notes were not found with decedent's papers in his safe deposit box at the time of his death and Mrs. Haman in her testimony says that on an evening in April, 1931, her father came to her apartment and called her into the bathroom, having in *Page 454 
his hands a number of notes which she says were her notes; as to the number of them she could not tell; and that he told her that she should not worry any longer about this indebtedness and that she would not have to pay and he thereupon burned the notes. No one was present on this occasion and there is no corroboration of this incident.
The complainant's witness, one Robert F. Congdon, told of a visit which he and Mrs. Congdon made to the Kisterbocks in Atlantic City in the spring of 1933, at which time Mr. Kisterbock brought up the matter of notes which he held, and in the course of his remarks which took place at the Chelsea Bank in Atlantic City, he said that Helen (meaning Mrs. Haman) had gotten him for more than $27,000, and that she must pay every cent back with compound interest. The decedent at that time got out his safe deposit box which Mr. Congdon said was full of notes and some jewels. He took the notes out of the box and handed them to Mr. Congdon, saying, "here they are." Mr. Congdon said that that was personal and handed them back to him. He referred to these notes as being a stack and that the box was filled.
If the testimony of Mr. Congdon is to be believed, then these notes were in existence as late as 1933, two years after Mrs. Haman says that they were destroyed by her father. I am not satisfied that these notes were so destroyed by him, thus extinguishing the debt from Mrs. Haman as claimed by her; but notwithstanding these expressed views, I am unable to determine from the proof the number, amounts and terms of such notes; therefore, I am unable to make any decree based on the alleged ownership of these notes.
With reference to the Scarlett mortgage which was executed by William E. Scarlett to Violet McLaughlin to secure a bond in the sum of $4,000 on property in Camden county, which mortgage was given in 1920 and assigned by Violet McLaughlin to Helen K. Haman by an assignment in 1923 and recorded, the bond and mortgage was in the possession of the decedent and in his safe deposit box when he died. The assignment was in Mrs. Haman's possession and was produced by her at the hearing. The testimony of Mrs. *Page 455 
Haman respecting this matter was that she did not know that her father was going to assign the mortgage until just before it was assigned, although she had known of the existence of it sometime before. She said that her father told her he was going to give her this mortgage. So far as the evidence discloses, no demand was made upon Mrs. Haman by the decedent during his lifetime for the return of this mortgage.
As to property known as White Horse Pike property, in Camden county, it appears that this was originally purchased in 1924. The decedent gave his check for $2,000 to Mrs. Haman and she in turn drew her check for the same amount as payment on the property which was conveyed to her. This property was subsequently sold for $4,000 in cash and a mortgage for $1,200 which was taken in the name of Mrs. Haman, which mortgage was subsequently foreclosed, and the deed by the sheriff was made to Mr. Kisterbock. In 1931, he, together with his wife, conveyed this property to Mrs. Haman, and according to her testimony he told her that he intended to convey it to her without stating for what purpose until about four months later, in October, 1931, when he told her, according to her testimony, that it was made to her as a gift.
A bond and mortgage was executed by Sarah Ryan to the decedent in 1932, the transaction having had its inception in the giving of four promissory notes for money loaned by decedent to Ryan in 1929, which notes aggregated $4,000. From the testimony of Mrs. Haman it appears that about a year and a half before this mortgage was executed her father asked her to go to the Guaranty Trust Company's office with him and that at that time he obtained the four Ryan notes from his safe deposit box and endorsed them to his daughter, Mrs. Haman, and handed them to her. Just before the mortgage was executed in June, 1932, Mrs. Haman met Mrs. Ryan, who asked her for what term she desired to have the mortgage, stating that Mr. Kisterbock had requested her to see Mrs. Haman, and that evening, her father told her that it would be safer if she, Mrs. Haman, should have a mortgage *Page 456 
on the property. The settlement for the mortgage took place in the office of the title company and when the mortgage was executed her father took possession of it and put it in the safe deposit box where it was retained by him until it came into the possession of his administratrix at the time of his death.
A bond and mortgage was executed by one Blackman to Mrs. Haman, dated April 8th, 1931, in the sum of $1,500. The bond at the time of the death of decedent was in his possession in his safe deposit box and the mortgage and title insurance policy were in the possession of Mrs. Haman. It appears from her testimony that her father was a friend of a barber named Turner who in turn had a friend named Blackman who wanted to borrow some money on this property which was located in Ventnor City and she and her father went to see the property and arranged for settlement in the office of a Miss Mitchell in the Schwehm Building, Atlantic City. Mrs. Haman, from the testimony, did not know that the mortgage was to be made to her but found this out when she went with her father to the settlement when he told her he intended to give her the mortgage and it was made in her name. The mortgage was recorded by Miss Mitchell and sent to her with the title policy which she put in her safe deposit box. The bond was held by her father. The money for the mortgage was paid by the decedent by check drawn to the order of Mrs. Haman who endorsed the check for the purchase of the mortgage.
In 1929, there was a transaction involving the purchase of some lots at Miramar, Cape May county, New Jersey, by deed made by one Raymond to Mrs. Haman on May 27th, 1929, which deed was in the possession of Mr. Kisterbock and in his safe deposit box at the time of his death. The transaction, as I gathered from the testimony of Mrs. Haman, was that she and her father went to the office of Mr. Richards in Ocean City at which time Mr. Kisterbock inquired as to the papers and told her that he had caused the deed to be made in her name, and that same evening her father told her that he had made a gift to her of these lots. The money for these lots was that of the decedent. *Page 457 
Another transaction was that of a bond and mortgage made by Congdon to Mrs. Haman, dated January 18th, 1933, in the sum of $3,000. Her version of this transaction was that some time in January, 1933, her father said that Mr. and Mrs. Congdon, who were related to Mrs. Kisterbock, wanted to buy a house and that he was going to help them. The property was located on North Eighth street, Philadelphia. He said that he would draw a check to her order for $3,000 and she should draw her check to the order of the Northern Central Trust Company and that the mortgage was to be made to her. This transaction took place. Mrs. Haman testified that she did not know her father was going to loan the money or that the mortgage was to be given in her name but he informed her of this when he gave her the check and said that he was making a gift of the money to her. At the time of the settlement she was not present but her father attended to the matters relating to the same and the bond and mortgage was received by her afterward.
Three notes were given by one Joseph C. Davenport and Jeannette Davenport, one dated May 15th, 1929, for $4,615.07, one dated May 1st, 1930, for $1,000, and another dated June 9th, 1930, for $1,000, all drawn to the order of decedent. As to this transaction, Mrs. Haman testified that about Thanksgiving of 1932 her father asked her to go to the Guaranty Trust Building because he had some notes he was going to give her and at that time he gave her these three notes, after having endorsed them to her, and told her to put them in her safe deposit box for safe keeping, stating that he was making a gift of them to her.
Two notes were given by Louis J. Abrams and Jean L. Abrams, one dated April 13th, 1929, for $600, and the other dated May 4th, 1929, for $900, both payable to decedent. As to these notes, it appeared from the testimony of Mrs. Haman that in April, 1932, she was called on the telephone by her father who said that he would stop for her and take her to the Guaranty Trust Company, but did not state the purpose of the visit to the trust company until she got there when he got these two notes from his safe deposit box and *Page 458 
endorsed them to her, telling her that he was making a gift of them to her. With these notes was certain jewelry held as collateral, which jewelry was retained by the decedent in his safe deposit box and not turned over to Mrs. Haman. So far as the payment of interest on these notes and a principal payment thereon, these were made to decedent during his lifetime, although the interest was received by Mrs. Haman after her father's death.
The decedent had an account in the First Penny Savings Bank, now Western Savings Fund Society of Philadelphia, Pennsylvania, in October, 1927, amounting to $5,572.60, and by a letter from the decedent to this bank, he directed the transfer of this account to Mrs. Haman. The letter reads as follows:
"October 29th, 1926. First Penny Savings Bank Chestnut Juniper Sts. Philada.
Dear Sirs:
I make as a present to my daughter, Mrs. Helen K. Haman all monies now on deposit with you in my name book No. 127436 — 1st deposit $4,500, 2d deposit $2,500, withdrawals, 1st $1,000, 2d, $500, with accumulated interest to Helen K. Haman. Please mail her all necessary credentials for her to sign please give her the number of book and keep the book in your bank.
 Resp. Yours WILLIAM H. KISTERBOCK
formerly 4139 N. 8th St. Philada. untill June 1st, 1927, Cordova Apt. 5-A 33 So. So. Carolina Ave. Atlantic City, N.J. my daughters signature address below
 HELEN K. HAMAN, Cordova Apt. 5-A Atlantic City, N.J."
The account was transferred by the bank but the bank book was not delivered to her but held at the bank. At the time the letter was written the decedent asked Mrs. Haman to sign the same and then he told her that he was making a gift of the bank account to her. This account was not disturbed by either the decedent or Mrs. Haman during his lifetime as to withdrawals with the exception of 1927 when Mrs. Haman said her father told her that Mrs. Butterick, a daughter *Page 459 
of complainant, Mrs. Pabst, wanted a loan of $2,000 to engage in business and that the decedent told Mrs. Haman that he thought it was a good investment to be made and suggested that she obtain a check out of this account. This she did but before the transaction was completed the decedent received some money from another source and advanced the loan out of these moneys and that the check for $2,000 on the First Penny Savings Bank was redeposited. No explanation was made as to why the book was retained at the bank except the explanation of Mrs. Haman that it was left there for convenience in adding the interest as it accumulated. No money was drawn from this account, aside from the $2,000 which was redeposited, until after the death of Mr. Kisterbock. On January 1st, 1934, the bank book showed a balance in this account of $9,990.89. This was shortly before decedent's death. Mrs. Haman, on January 20th, 1934, which was three days after her father's death, withdrew from this account $700.02 and on February 14th, the further sum of $2,000.02.
The evidence discloses that the decedent had great confidence in his daughter, Mrs. Haman, at least up to a short time before his death. In fact, she stood in a confidential relationship with him and acceded to anything he proposed in connection with transactions relating to his property, whether it had been placed in her name or not, and that, apparently without any hesitation, he loaned her a large sum of money and carried on many transactions with her as evidenced by numerous checks drawn by the decedent to Mrs. Haman which are in evidence and by memorandums which appeared on yearly calendars found in his safe deposit box at the time of his death.
This case presents considerable difficulty in the determination of the relations which existed between the decedent and his daughter, Mrs. Haman. Apparently she was the favorite child, although there is nothing in the testimony presenting any good reason why he did not have the same confidence in the complainant, his daughter, other than the fact that she did not live as close by and was not in touch with him so *Page 460 
frequently and the fact that she may not have been so agreeable in yielding to his various whims. The decedent's relations with his wife, so far as the testimony discloses, were entirely harmonious and he had indicated that she would be well taken care of.
It seems to me that the burden of proof is upon Mrs. Haman to establish the defense that the transactions which have been outlined constituted valid gifts inter vivos.
While the law recognizes and will sustain a gift inter vivos
whenever one is satisfactorily established, nevertheless public policy requires that the evidence adduced in support thereof shall be considered in the light of and tested by those sound safeguards against the perpetration of fraud and perjury which the law so wisely laid down and prescribed in such cases. The cases hold that such a gift can only be established by showing first, a donative intent on the part of the donor; second, a delivery of the subject-matter of the gift in the manner in which its delivery is most capable; third, that the donor has stripped himself of all ownership and dominion over the subject-matter of the gift. Swayze v. Huntington, 82 N.J. Eq. 127; affirmed,83 N.J. Eq. 335; Mullen v. Mullen, 98 N.J. Eq. 90; affirmed, Ibid.727; Page v. Afflerbach, 102 N.J. Eq. 390; Reeves v. Reeves,Ibid. 436; Kirkpatrick v. Kirkpatrick, 106 N.J. Eq. 391; FirstNational Bank of Lyndhurst v. Rutherford Trust Co., 109 N.J. Eq. 265.
While Mr. Kisterbock, the decedent, apparently exercised a donative intent with respect to these various alleged gifts, yet this intent apparently lacked in many cases the complete parting with the evidence of transfers, as well as parting with the income and profits which might accrue from the securities and other properties transferred and from control over the real estate. He continued to exercise practically the same control over this property as he had prior to any transfer to his daughter, Mrs. Haman. By her testimony she said that her father never requested her to reconvey nor asked her to execute a declaration of trust or tell her that the property was held in trust, but did tell her that the property was a *Page 461 
gift to her. On the other hand, she said that she would at any time at her father's request, reconvey or transfer to him any of these alleged gifts. It was established that any income which she received from this property was turned over to her father and in fact a great part of the income was paid to him directly and retained by him.
It seems to me that her conduct was such as to negative the view that he had absolutely disposed of this property to her by valid gifts inter vivos. He certainly did not give up his dominion and control over this property and continued to transact the business with a relationship the same as if it had remained in his own name.
The decedent made loans, as I have already said, from time to time to his daughter, Mrs. Haman, in the large aggregate amount indicated, taking in each instance, so far as can be determined, a note for these loans, which notes were to bear interest, and it seems unusual that he should have loaned her this money and then at the same time given her mortgages, real estate, a bank account, promissory notes and other property of considerable value. Mrs. Haman paid over to her father, without any demand or request on his part, all the income which she received. He paid the taxes and any other charges against the real estate. She neither reported nor paid any income tax on income from this property which was transferred to her and the fair conclusion to be drawn from the transactions is that it was the purpose of Mr. Kisterbock to place this property in Mrs. Haman's name merely as a matter of convenience because he exercised, as I have said, control over both the principal and income, as indicated by her testimony as well as his dealings with the various properties. If Mrs. Haman had treated the property, after its transfer or conveyance to her, as her own, there was no reason why she should have permitted her father to deal with it as his own, collect the income and turn over to him any income which she may have collected. It all negatives the idea that there was a valid gift to her. He had an income from a trust fund which ceased at the time of death, out of which his widow would receive no benefit whatever, and there *Page 462 
was nothing in his conduct that would indicate that he wanted to leave his wife without support. The various transactions savour of the desire apparently on the part of decedent to place in the hands of his daughter the title to his property, but for his benefit, and as may be gathered from the testimony, for the benefit of his widow and other daughter after his death; in just what manner I cannot determine by the testimony, but I am convinced that the decedent was the equitable owner of this property during his lifetime under such arrangement as he may have had with Mrs. Haman, and that she must be held to an accounting for the same to the complainant, his administratrix, so far as the personal property is concerned, and is holding only such interest in the real estate to which she might be entitled by reason of the fact that the decedent died intestate.
I will advise a decree in accordance with these conclusions.