This appeal is pursued by the executrix under the will of Walter Hanstein, deceased, to have re-examined and determined *Page 133 
the legal propriety of the assessment of a transfer inheritance tax by the State Tax Commissioner upon certain currency in the amount of $31,876.91 said to have been in the safe deposit box of the decedent at The Equitable Trust Company of Atlantic City at the time of his death. R.S. 54:34-13.
In resisting the assessment, the executrix insists that in the spring of 1937 this accumulation of cash was donated by the decedent to her, his wife, in trust to be expended for the education of their son and two daughters, and that this fund should not have been incorporated as a part of the taxable estate passing under the decedent's will. This point was emphasized in the proofs submitted to the Commissioner. He concluded, however, that the evidence failed to establish either a valid gift or a voluntary trust inter vivos.
It is observed that the Commissioner does not propose that the alleged inter vivos transfer, if in fact made by the decedent, is taxable as one made in contemplation of death, or as one designed to take effect in possession or enjoyment at or after the death of the decedent. Therefore, the basic controversial question is whether the decedent during his life and on the stated occasion made a valid gift of this money to his children, or created a voluntary trust for their benefit in respect thereof. This, of course, is a factual inquiry, and its solution must necessarily be harvested from the record and proofs submitted to the Commissioner.
Where the determination of the Tax Commissioner is investigated on appeal, the Ordinary now reviews the proofs to ascertain the true and actual facts and circumstances. Legitimate and logical inferences are drawn from the facts deemed to be established and the evidence is duly weighed. Kellogg v. Martin, 130 N.J. Eq. 338; 22 Atl. Rep. 2d 430.
In the consideration of the issues here presented, it may be assumed that the essential elements necessary to prove an intervivos gift or a voluntary trust are identical. Zimmerman v.Nauhauser, 119 N.J. Eq. 424; 183 Atl. Rep. 820; Travers v.Reid, 119 N.J. Eq. 416; 182 Atl. Rep. 908; Bankers Trust Co. v.Bank of Rockville, c., 114 N.J. Eq. 391; 168 Atl. Rep. 733;Nicklas v. Parker, 69 N.J. Eq. *Page 134 743; 61 Atl. Rep. 267; affirmed, 71 N.J. Eq. 777;71 Atl. Rep. 1135; In re Coyle, 9 N.J. Mis. R. 158; 154 Atl. Rep. 744.
The requisite elements of a gift inter vivos are: first, a donative intent on the part of the donor; second, an actual delivery of the subject-matter of the gift; and, third, an absolute relinquishment by the donor of all ownership and dominion over the subject-matter of the gift, at least to the extent practicable or possible, considering the nature of the thing given. Taylor v. Coriell, 66 N.J. Eq. 262;57 Atl. Rep. 810; Swayze v. Huntington, 82 N.J. Eq. 127, 133;87 Atl. Rep. 106; affirmed, 83 N.J. Eq. 335; 91 Atl. Rep. 1071; Besson v.Stevens, 94 N.J. Eq. 549, 556; 120 Atl. Rep. 640; Stevenson v.Earl, 65 N.J. Eq. 721; 55 Atl. Rep. 1091; Nicklas v. Parker,supra; Conners v. Murphy, 100 N.J. Eq. 280; 134 Atl. Rep. 681;Page v. Afflerbach, 102 N.J. Eq. 390; 140 Atl. Rep. 792;affirmed, 104 N.J. Eq. 489; 146 Atl. Rep. 916; Reeves v.Reeves, 102 N.J. Eq. 436; 141 Atl. Rep. 175; Kirkpatrick v.Kirkpatrick, 106 N.J. Eq. 391; 151 Atl. Rep. 48; First NationalBank of Lyndhurst v. Rutherford Trust Co., 109 N.J. Eq. 265;157 Atl. Rep. 142; Salmon v. Pittenger, 122 N.J. Eq. 165;193 Atl. Rep. 843.
Similarly, a voluntary trust, as distinguished from one supported by a consideration, is inherently a gift, and it must be fully declared to render it effective as such. Austin v.Young, 90 N.J. Eq. 47; 106 Atl. Rep. 395; Cessna v. Adams,93 N.J. Eq. 276; 115 Atl. Rep. 802.
To prove satisfactorily the existence of each of the essential elements of a gift inter vivos, the evidence should be clear, cogent and convincing. Cessna v. Adams, supra; Stines v.Carton, 98 N.J. Eq. 415 (at pp. 419, 420);129 Atl. Rep. 251; Reeves v. Weber, 111 N.J. Eq. 454; 162 Atl. Rep. 566.
Turning, now, to the proofs in the record embracing the reports, appraisal, affidavits and depositions upon which the Commissioner based his conclusion, it is evident that Walter Hanstein, a resident of Atlantic County, died testate on January 16th, 1940, at the age of forty-six years, leaving him surviving his widow, who is the executrix nominated in his *Page 135 
will and the appellant here, one son, Walter Hanstein, Jr., then sixteen years of age, and two daughters, Ruth, fourteen, and Bertha, eleven. Unaware of the alleged transfer of the cash and of its alleged presence in the safe deposit box of the decedent, the Commissioner initially valued the net estate of the decedent for the purpose of taxation at $41,556.31, and the taxes so assessed were fully paid. On March 18th, 1941, the proctors representing the executrix informed the Commissioner by letter that the return theretofore submitted by the executrix lacked reference to the gift or trust in respect of the cash, whereupon, in view of this tardy disclosure and other circumstances, the Commissioner referred the matter to a special investigator before whom testimony in greater detail was adduced.
A thoughtful consideration of all of the evidence introduced by and on behalf of the appellant reveals that in some significant particulars it is irreconcilably divergent, and in others positively contradictory. Strangely, the two envelopes containing this substantial amount of cash seem to have been unobserved by the district supervisor in the preparation of his inventory of the contents of the safe deposit box. Oddly, the executrix ignored this fund in the verified return originally presented to the Commissioner, although in schedule "C" she was obliged to state specifically all transfers of any property made at any time by the decedent in trust by deed or agreement. Still later, she deposed that in the deposit box at the Equitable Trust Company at the time of the decedent's death, there was an envelope bearing the endorsement to which reference will be presently made, containing $11,876.91 in cash. She states that this fund in cash was given by the decedent to her in trust in the year 1931, and that the fund has been continuously thereafter held by her either in the form of cash or government bonds. No mention whatever of the additional $20,000 is made by her in this affidavit.
Her testimony introduced at a later date, succinctly stated, tends to divulge that in 1931 Mr. Hanstein became somewhat apprehensive of the financial stability of the building and loan associations in which he had invested and he thereupon *Page 136 
withdrew these investments, utilizing the money to purchase government bonds of the par value of $30,000. At that time he remarked "We are not going to play with this money and make more on it necessarily. This is for the children's education." In adverting to this event, the appellant in her testimony said "Now it would be stating it too strongly to say he established a trust, I suppose, with those words, because it was a conversation." The appellant then acknowledges that she is not certain where the bonds were then lodged for safe-keeping but assuredly they were not in her possession. Parenthetically, it may be noted that she frequently entered the safe deposit box in the Equitable Trust Company. She surmises that the decedent undoubtedly detached the maturing interest coupons of the bonds and collected the interest for himself until June 1st, 1937. The appellant then relates that an action was instituted in the United States District Court for the District of New Jersey by the receiver of the Chelsea Second National Bank and Trust Company to recover $680,000 from her husband and others, and that the prosecution of this action seriously concerned him. It was while in this state of siege that her husband, she declares, remarked "Here, I have been turning over in my mind the setting up of a formal trust." Shortly thereafter, he said, "This is what I am going to do. I am laying my plans as if this suit weren't here. If it gets opened up, it gets opened up but I am going to put these things [bonds] in an envelope and give them to you to hold in trust for the children," and that he forthwith delivered the bonds to her in an envelope upon which he wrote "Prop. of H.R.H. tr for W.H. Jr., R.H. B.H." (the initials of her name and of the names of the children), subscribing thereto the initials of his own name. The appellant asserts that she then placed the envelope with its contents in the safe deposit box at the Equitable Trust Company and that on June 1st, 1937, she collected the accrued interest payable on the bonds and promptly thereafter deposited the interest in equal shares in bank accounts then opened for each of the three children. Incidentally, it is conceded that the alleged donor did not at that time file any gift tax return relative to this gift. *Page 137 
The appellant then observes that in November, 1937, "Mr. Hanstein converted these bonds into cash * * *." It seems evident, however, that the brokers remitted the proceeds of the sale ($31,887.21) to Mrs. Hanstein. When and where the check payable to Mrs. Hanstein was cashed; under what circumstances portions of this currency were placed in two envelopes; and why the funds, like the one installment of interest, were not deposited to the credit of the children or in trust for them, remain unelucidated. There were no expenditures made from this fund. The safe deposit box was registered in the name of the decedent and of his mother, as lessees. The appellant evidently was authorized to visit it.
Another quotation from the testimony of the appellant is illuminating:
"Mr. Hanstein was a young man with unusually good judgment, he wanted the control, he wanted to be able to give me advice on how to control the investment of that substantial fund because if I didn't go to him when half the town was it would have been a little unnatural. He didn't want to be hampered with court permission and this and that and the other, he knew between ourselves we would maintain this trust and he thought it was more fluid this way for handling to the children's advantage therefore he didn't set up any formal trust."
The expressions "he wanted the control," "he didn't want to be hampered with court permission," "he knew between ourselves we would maintain this trust * * *" are exceedingly significant.
Another conflict in the evidence attracts notice. In an affidavit sworn to by one Gladys B. Rockford on May 28th, 1940, this deponent declares with emphatic certainty, that as the secretary of the decedent, she knows that the envelope bearing the mentioned endorsement remained in the safe deposit box from about the year 1931. This testimony is manifestly discordant with the assertion that the endorsement was inscribed by the decedent on the occasion in 1937.
If the superficial import of all the evidence is penetrated more inquisitively, the probable truth becomes perceptible. The decedent undoubtedly had the profound interest of an *Page 138 
affectionate father in the future welfare of his children. At first, the economic debacle and then the institution of the suit against him, caused the decedent to measure the possible exigencies of the future. He exhibited his state of mind when he remarked "I have been turning over in my mind the setting up of a formal trust and I am scared to death if I do it now the department will say I am diverting assets from one pocket to another and that I am trying to be dishonest, we better let it ride." He was striving to recognize the eventualities of the future, both auspicious and despairing. He was disturbed and undetermined. He wished to avoid the possible regret of having neglected to provide diligently for the education of his children while he was financially able to do so and yet — he did not propose to endanger his credit and reputation from the apprehended critical inferences that might spring from a voluntary gift of such a substantial sum. Moreover, he obviously preferred, unless circumstances otherwise required, to retain dominion over his own assets. He accordingly made the preparations which would enable him promptly to pursue either course, but nothing more inauspicious occurred to induce him to act.
The decedent was a learned, able and experienced lawyer who was perfectly aware of the means of creating and evidencing a voluntary trust or a valid gift. The appellant is also an intelligent and trustworthy person. The indecisive posture of her husband concerning this fund has occasioned confusion in her interpretation and exposition of the intent of the decedent.
Appellant has cited several decisions in which alleged trusts or gifts were found substantiated by the proofs. Examination of those decisions reveals that the evidence in those cases was of a more convincing character than that offered in this case or they were aided by statutory provision.
In Bankers Trust Co. v. Bank of Rockville, c., supra, the evidence of the inter vivos gift to the children was clear and explicit and was furnished by an impartial party.
In Dill v. Dill, 118 N.J. Eq. 374; 179 Atl. Rep. 370;affirmed, 119 N.J. Eq. 467; 183 Atl. Rep. 172, an assignment of a mortgage was questioned. Due execution and *Page 139 
acknowledgment were proved together with the lucidity of the assignor. That case and First National Bank of Perth Amboy v.Keller, 122 N.J. Eq. 481; 194 Atl. Rep. 554, do hold that the receipt of income by the donor does not rebut a gift of the principal. That being so, the evidence that Walter Hanstein received the income on the bonds from 1931 to 1937 would be inconclusive on the question of gift or trust. His own statements made in 1937, do show that no gift or trust had been executed prior to that time. The rest of the Keller Case does not help this appellant for the bonds in litigation there were in the possession of the alleged donee and not the donor.
In Janes v. Falk, 50 N.J. Eq. 468; 26 Atl. Rep. 138, the trust was declared by a writing, a speech and an allocation of the indicia to the estate papers. No such unequivocal acts are found in the instant proofs.
So, also, in West Jersey Trust Co. v. Read, 109 N.J. Eq. 475; 158 Atl. Rep. 113. The trust was a written declaration and the evidences of the trust fund were found in the safe deposit box of the alleged beneficiary.
The decision in Hickey v. Kahl, 129 N.J. Eq. 233;19 Atl. Rep. 2d 33, is rested upon a statute relating to the ownership of funds in bank accounts opened by A in trust for B.Cf. Thatcher v. Trenton Trust Co., 119 N.J. Eq. 408;196 Atl. Rep. 470; Travers v. Reid, supra.
Viewed judicially, the evidence introduced to prove the essential elements of the alleged gift or voluntary trust is not persuasive. The many infirmities in this evidence destroy its probative value. Admittedly, the decedent owned the bonds from which the cash was derived and the cash was discovered in a safe deposit box registered in the name of the decedent and his mother. The mother disclaims ownership of the cash. From the circumstances, a presumption arises that the decedent was the owner, unless overcome by sufficient evidence of ownership in another. Rabassa v. Raab, 95 N.J. Eq. 255 (at p. 256);122 Atl. Rep. 309; Salmon v. Pittenger, supra; 65 C.J. 318 § 80.
I apprehend that even if the registry of the box had also included the name of the appellant, a like presumption would *Page 140 
arise from the circumstances. In re Wohleber's Estate, 320 Pa. 83; 181 Atl. Rep. 479. The appellant is not asserting any claim to the cash in her individual right.
The conclusion is that the evidence fails to establish the existence of the alleged inter vivos gift or voluntary trust. The fund was properly incorporated as a part of the taxable estate passing under the will of the decedent. The determination of the State Tax Commissioner and the assessment are therefore affirmed. *Page 141