THEODORE N. BOVEE

*v.*

ALFRED HINDE *et al.*

*Filed at Ottawa October 31, 1890.*

1. DELIVERY OF DEED—*what will constitute a delivery—and of evidence in respect thereto.* To constitute a sufficient delivery of a deed there must be a clear manifestation of the intention of the grantor that the deed shall pass the title at the time, and that he shall lose all control of it.

2. So where the grantor hands his deed in an envelope to the grantee, to be deposited by the latter in his box in a bank for safe keeping, but not for the purpose of passing the title, this will not amount to a delivery.

3. And in case the deed is intended to take effect only upon the death of the grantor, and for this reason it is not recorded, but retained by the grantor until shortly before his death, when it was handed to the grantee in a sealed envelope, to be placed in a bank vault for safe keeping, such transfer of the custody of the deed will not be held a delivery.

4. If the grantor keeps possession of the deed up to the time of his death without having had the same recorded, the fact the deed has not been recorded affords at least *prima facie* evidence of its non-delivery.

5. Where a husband caused to be recorded a deed from himself and wife to a third person, and a deed from such third person to the wife of the latter, this, it was held, will afford *prima facie* evidence of a delivery of the deeds.

6. RE-ASSERTING TITLE—*after it has once vested.* Where a husband has land conveyed to his wife to enable her to make a testamentary disposition of the same, which proves abortive, the former can not, on the death of the wife, seized in fee, have the deed to her set aside and the title vested in him, but such title will pass to her heirs-at-law.

APPEAL from the Superior Court of Cook county; the Hon. EGBERT JAMIESON, Judge, presiding.

Messrs. SWETT, GROSSCUP & WEAN, and Mr. R. A. CHILDS, for the appellant:

The deed of Mrs. Bovee was testamentary in its nature, and not good as a conveyance. *Walker* v. *Jones,* 23 Ala. 448; *Hall* v. *Bragg,* 28 Ga. 330; *Symmes* v. *Arnold,* 10 id. 506; *Hester* v. *Young,* 2 Kelley, 31; *Cline* v. *Jones,* 111 Ill. 563; *Carey* v. *Dennis,* 13 Md. 1; *Baldwin* v. *Maultsby,* 26 N. C. 505; *Hawkes* v. *Pike,* 105 Mass. 560.

To make the delivery of a deed good, the power of dominion over the deed must be parted with. Until then the instrument is merely ambulatory. *Cook* v. *Brown,* 34 N. H. 475; Martindale on Conveyances, 175; Tiedeman on Real Prop. sec. 813.

The instrument in the grantee's hands is only *prima facie* evidence of a delivery, and proof of a contrary intention rebuts that presumption. Tiedeman on Real Prop. sec. 813; Washburn on Real Prop. (5th ed.) 310; *Taft* v. *Taft,* 59 Mich. 185; *Black* v. *Shreve,* 13 N. J. Eq. 336; *Roberts* v. *Jackson,* 1 Wend, 478.

The essence of the delivery is the intention of the party. *Bryan* v. *Walsh,* 2 Gilm. 557; *Gunnell* v. *Cockerill,* 84 Ill. 319; *Brooks* v. *People,* 15 Bradw. 570.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The appellant, Theodore N. Bovee, filed this bill against the appellees, Alfred Hinde and Lucinda Hinde, his wife, on January 13, 1888, in the Superior Court of Cook County, for the purpose of procuring a reconveyance to himself of lot 11 in Webster's subdivision of lots 6 to 15 of Block 2 of Union Park Addition to Chicago in W. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ Sec. 8, Town 29 R. 14 in Cook County, and known as No. 32 Ogden Avenue in the city of Chicago. The bill was dismissed for want of

equity, and the case is brought here by appeal from such decree of dismissal.

On June 7, 1882, the complainant in the bill conveyed the premises in question to one William C. Dunning, and on June 8, 1882, Dunning and wife conveyed the same to Mary Louisa Bovee, the wife of complainant. On May 7, 1886, Mary Louisa Bovee conveyed the said lot to the defendant Alfred Hinde, and, on April 4, 1887, Alfred Hinde made a deed of the same directly to his wife, Lucinda Hinde.

There was a building upon the property in controversy, portions of which complainant rented to various tenants, and a portion of which he has always occupied, with his wife in her life-time, and alone, since her death. Mrs. Bovee died on March 1, 1887. Previous to her death a close intimacy existed between her and her husband, the complainant herein, on the one side, and the defendants, Hinde and wife, on the other side. Hinde was a physician by profession and while he was studying medicine lived with Bovee in the latter's house in the years 1878, 1879 and 1880. Neither of these couples had any children, and their friendship was so great that for years they kept up almost daily visiting with each other.

Bovee and his wife and Hinde and his wife were spiritualists, so-called; that is to say, they believed in communications supposed to come from the spirits of the dead, and suffered their conduct to be somewhat guided or influenced by such alleged communications. It is admitted that the complainant and his wife were spiritualists, and, while the defendants deny in their answer that they believe in spiritualism, we think the testimony shows that they pretended to be adherents of that system. Bovee and Hinde originally became acquainted with each other at the house of Mrs. Cora Richmond, a noted lecturess upon spiritualism. Certain letters written by Hinde to Mr. and Mrs. Bovee, and which are set out in the record, contain such expressions as the following: "There is a bond of spiritual relationship that is readily

recognizable between us four, but its entire meaning I cannot. fully define in this external life. Beyond this life, however,. I expect we will be able to read its import, and there estimate its meaning, etc.   *   *   *   A few years since, external matters engrossed my entire attention—to-day, they are losing their hold upon me and do not satisfy.   *   *   *   I am· merely an observer of the panorama of my own life, that other· loving and unseen hands are displaying to my view, and I have reason to believe I shall know it all in due time, etc."

One Mrs. L. Pet Anderson, who is said to have had an undue influence over complainant, is spoken of in the answer as "a notorious spiritualist and clairvoyant." In 1885 complainant and his wife adopted as their daughter a girl named Emma Rensen, who died in about eighth months thereafter. Mrs. Hinde's own evidence shows that she had been a spiritualist prior to Mrs. Bovee's death, and pretended to talk with the spirits after November, 1886, and to have communications with the spirit world after that date and up to the time of Mrs. Bovee's death, and before her death to have interviews with her daughter Emma; and she carried to Mrs. Bovee "spirit messages" claimed to have been received through Mrs. Anderson. This testimony is merely referred to as illustrating the intimacy of the parties growing out of their common religious faith.

The first question of fact in the case relates to the deed running from Mrs. Bovee to Alfred Hinde; was there a delivery of that deed to the grantee therein named during the life-time of Mrs. Bovee? If there was not, then the deed from Alfred Hinde to Lucinda, his wife, falls to the ground. The only witnesses upon this question of fact are the parties to this suit, and there is a sharp conflict between the testimony of the complainant on the one side and of the two defendants, who are husband and wife, upon the other side. Each of these witnesses has a personal pecuniary interest in the matters testified to.

Mrs. Bovee and her husband, having no children and having recently lost their adopted daughter, desired that their property should go to Dr. Hinde after they should die. They had an idea that if they made a will, the courts would not sustain it because they were spiritualists, and accordingly they resolved to make a deed to him. They informed him of their intention to make such deed. The deed bears date May 7, 1886; in the body of it Mrs. Bovee alone is named as grantor, but the deed was signed by her and her husband, and they both acknowledged it before a notary on the day of its date. It is an undisputed fact that this deed was never recorded in the life-time of Mrs. Bovee.

The complainant swears, that the deed was never delivered to Hinde either in the life-time of his wife or after her death; that he kept the deed in his possession from the day of its date until June, 1887, and that during all this time Hinde never saw it, although he knew it had been signed and acknowledged; that Hinde had a box in the vaults of the Fidelity Safe Deposit Company, and had permitted the complainant to deposit therein for safe-keeping certain bonds and other papers; that, in June, 1887, complainant, intending to leave the city for a certain time, delivered to Hinde a package, containing certain mining stock, abstracts of title and deeds, and, among others, the deed in question, for safe-keeping in his said box; that on or about January 6, 1888, complainant went to the defendant Hinde to get said papers, but was refused access to them by Hinde and his wife, who claimed to own the property. Thereupon complainant was obliged to begin a replevin suit to get possession of his bonds, although the defendants now concede his right to the bonds and claim that they never intended to withhold them from him. He also at the same time filed this bill not only for the purpose of setting aside the conveyances in question, but also to prevent the defendants from conveying away the property.

Many circumstances tend to confirm the testimony of the complainant. There was no record of the deed from Mrs. Bovee to Hinde from the day of its date to the death of Mrs. Bovee on March 1, 1887, a period of about ten months, nor was the deed recorded until about two months after her death. If the deed was in the possession of Mrs. Bovee up to the time of her death, the fact that she held it without recording it would be at least prima facie evidence that there had been no delivery of it. If it was delivered to Hinde on May 20, 1886, as he claims in his testimony, we see nothing in the record of his conduct with reference to the papers under his control in January, 1888, to indicate that he would not have recorded the deed as soon as it came into his possession.

It appears from the testimony of the defendants themselves that the deed was in the possession of the complainant for four or five days at the beginning of April, 1887, and that it was also in his possession on or about April 28, 1887, and that it was also in his possession in June, 1887.

The defendants were never in possession of the building or of any part of it. The complainant and his wife continued to occupy rooms in the building and to rent the rooms not occupied by them to other parties long after May 7, 1886, and long after May 20, 1886. On April 6, 1887, after the execution of the two deeds, one from Mrs. Bovee to Dr. Hinde, and one from Dr. Hinde to his wife, the complainant executed in his own name a lease of "the basement floor of the three story attic and basement stone front house known as No. 32 Ogden Avenue" to one Stevenson for the year from May 1, 1887, to May 1, 1888. In July, 1886, the complainant and his wife being in Wisconsin wrote to Hinde to collect certain over due rent from one of their tenants and remit it to them, enclosing at the same time a receipt for such rent to be delivered to the tenant. About this time, also, complainant and wife desired Hinde to take rooms in their building and proposed to charge him for such rooms $35.00 or $40.00 per month. The com-

plainant paid all the taxes upon the property after May, 1886. The defendants are forced to admit that there was no delivery to them of the possession of the property, and a delivery of the deed would have been inconsistent with the intention to withhold the possession of the premises, because Hinde or his creditors could easily dispose of the property when the title should be known to be in him.

What is the explanation of all these circumstances? The defendants themselves furnish this explanation in their own evidence. They admit that neither of them was to have the property until the death of both Mr. and Mrs. Bovee. The deed to Hinde was only intended to be a sort of testamentary disposition of the property after the death of complainant and his wife. Dr. Hinde says that, on May 5, 1886, two days before the date of the deed to him, Mrs. Bovee said to him in the presence of her husband: "I have decided to deed the house to you; at first I thought of making a will but knowing that one of our relations has threatened to break any will that we might make on account of our being spiritualists, I have decided to make it so sure that there will be no room for litigation after my death." He also says, that, on the said 5th day of May, Mrs. Bovee told him the deed was to be made "with the understanding that we, one or both of us, shall have the use of the house as long as we live." In the same conversation, according to his evidence, the package theretofore placed in his possession for safe-keeping was also referred to. This package contained four U. S. bonds of $1000.00 each and one U. S. bond of $500.00. He admits that these bonds were not delivered to him as owner, but that they were stored for safety in his box in the vaults of the Fidelity Safety Deposit Company, because complainant had no such box, and that complainant had access to the box for the purpose of cutting the coupons, and took them out in November, 1886 or 1887, and exchanged them for city bonds to the amount of $5000.00. He says that Mrs. Bovee then told him to take these bonds out of

the vault in the event of Mr. Bovee's death and give $1000.00 to Miss Belle Wheelock, and spend $1500.00 in the purchase of a home for complainant's brother. If this statement of a conversation with Mrs. Bovee is true, it would appear that the making of this deed was merely a part of an attempted oral testamentary disposition of all the estate, real and personal, though it is inconsistent with other testimony, which goes to show that the bonds were the property of complainant and not of his wife.

Mrs. Hinde swears that she also had a conversation with Mrs. Bovee on May 9, 1886, two days after the deed to Hinde was acknowledged, but before it is claimed to have been delivered. This conversation is the same as that stated to have been had by Hinde on May 5, 1886. It is detailed with the same minuteness and almost in the same words. Mrs. Hinde states that Mrs. Bovee then said to her: "At first I thought of making a will, but fearing that it might be broken on account of our being spiritualists, and on account of one of our relatives threatening to break any will we might make, I decided to deed it outright to the doctor with the understanding that Mr. Bovee and myself should have the use of the house as a home during our life-time," etc.

It is to be noted that the deeds from Mrs. Bovee to Hinde and from the latter to his wife are, upon their faces, absolute conveyances; they contain no provisions whatever as to the use of the property by the complainant and his wife, or either of them, during their lives. The purpose which Mrs. Bovee had in view in signing the deed to Hinde, as such purpose is stated by the defendants, tends to confirm and is entirely consistent with the testimony of the complainant that there was no delivery of the deed in his wife's life-time.

Let us now examine the evidence of the defendants as to the delivery of this deed. What they say upon this subject has so many of the characteristics of a made-up story that it does not commend itself very strongly to our credence. Where

they undertake to set forth what was said in a particular conversation, each uses almost identically the same words made use of by the other, and statements made on cross-examination are literal repetitions of statements made on the direct examination. We cannot refer to all of the peculiar features of this testimony, but will indicate enough to show why we do not regard it as in every respect reliable.

There was introduced in evidence a blue envelope, marked Exhibit B, upon the body of which were written the words: "Mr. or Mrs. T. N. Bovee," and across one end of which were written the words: "May 20, 1886." It is conceded that these words are in the handwriting of the complainant. The defendant Hinde swears that Mrs. Bovee delivered the deed in question to him in the presence of her husband on May 20, 1886; that when delivered it was enclosed in said blue envelope; that the delivery took place in Mrs. Bovee's room at 32 Ogden Avenue; that no one was present but himself and Mr. and Mrs. Bovee; that there was nothing else in the envelope but the deed; that this was the only envelope he had, containing any enclosures received from complainant prior to July 15, 1886; that he took the envelope with the deed in it to his house and kept it two days and on May 22, 1886, deposited it in his box in the Fidelity Safe Deposit vaults, where there was already deposited complainant's package containing the bonds.

There was also introduced in evidence an insurance policy on the house in question payable to Mrs. Bovee, dated October 2, 1884, running five years, together with certain written assignments thereon and the written consents of the company to such assignments. It is admitted that this policy was mailed at Palmyra, Wisconsin, on July 14, 1886, by the complainant to Dr. Hinde and received by the latter in Chicago on July 15, 1886. It is also admitted that Bovee and Hinde left Chicago together on May 22, 1886, and went to Wisconsin, and that complainant and his wife remained there until after the middle of July.

10—135 ILL.

Complainant swears that on May 20, 1886, at 32 Ogden Avenue he handed to the defendant Hinde said blue envelope; that it contained at that time the said insurance policy and nothing else; that witness was going away on May 22, 1886, and delivered the insurance policy to Hinde to be deposited for safe-keeping in his safety box, so that he could get the insurance money in case the house burned down in his absence; that said envelope did not contain the deed from Mrs. Bovee to Hinde; that witness wrote "May 20, 1886," on it to indicate the date of its delivery; that, at request of witness, Hinde sent the policy to witness at Palmyra on July 13, 1886, and on July 14, 1886, witness wrote on it an assignment of the policy, which was signed by his wife, and then sent the policy back to Hinde at Chicago.

Hinde also swears that he never saw the insurance policy until July 15, 1886, when it was sent to him from Palmyra; that complainant had not requested him to take from an envelope in his possession the insurance policy and send it to the complainant at Palmyra, and to this he swears positively.

Here there was a direct and positive contradiction between complainant and defendant Hinde; one swore that the envelope delivered on May 20, contained the deed from Mrs. Bovee, and the other swore that it contained the insurance policy. How is a court to decide who is telling the truth?

At a subsequent session during the trial, certain letters written by Hinde to the complainant were introduced in evidence. The defendants fail to produce any letters received by them from complainant, except one, although the correspondence was very voluminous, saying that they destroyed all such letters as soon as received. The one letter referred to is a letter claimed to have been handed to Dr. Hinde by the complainant in the latter part of 1887 as coming from his departed wife through the mediumship of Mrs. Anderson.

Several of the letters thus introduced establish in our minds the truthfulness of complainant's evidence as to the

contents of the blue envelope. Dr. Hinde was in Palmyra on July 8, 1886, and returned to Chicago on July 9, 1886. On July 13, 1886, he wrote a letter to Mr. and Mrs. Bovee, saying: "I opened the envelope as you requested and send you the paper you desire." What envelope? He has sworn that he had only one, and that one was the blue one already described, which was in the box at the vaults. What paper did he take from it and send to Palmyra? It could have been nothing but the insurance policy, because the endorsement on the policy bearing date July 14, 1886, was written by complainant and signed by his wife at Palmyra on July 14, 1886. Hinde admits that this policy was sent to him from Palmyra on the 14th and received by him at Chicago on the 15th. On July 15,·1886, he again writes to Mr. and Mrs. Bovee as follows: "Mr. B.'s postal card and letter to hand this A. M. I have got the consent and signature of Ross, as you directed." Upon again looking on the policy we find endorsed there a written consent, dated July 15, 1886, signed by James L. Ross & Co., the agents of the insurance company.

We are led to the conclusion from this evidence that the paper contained in the blue envelope was the policy and not the deed. Therefore, as both parties admit that the blue envelope and its contents were delivered to Hinde on May 20, 1886, and as defendants do not claim that there was any delivery of the deed in question if the policy, and not the deed, was enclosed in the blue envelope, it follows that there was no delivery of the deed to Hinde in the life time of the grantor, Mrs. Bovee.

Even if it be true that the deed was handed to Hinde as the enclosure of an envelope, there was no delivery of it in the legal sense of that word. It was merely left with Hinde to be deposited in his box for safe-keeping and not with a view of vesting in him the present ownership of the property. He never treated the deed as being the property of himself or his wife until demand was made for a conveyance from him in January, 1888. To constitute a sufficient delivery of a deed

there must be a clear manifestation of the intention of the grantor that the deed shall at once become operative to pass the title, and that the grantor shall lose all control of it. (*Byars* v. *Spencer,* 101 Ill. 429). Here the title was not to pass until the death of Mrs. Bovee and her husband, and the grantor never lost all control of it. The defendant Hinde claims that he made an inventory of the contents of his box on September 15, 1886. A copy of that inventory is in the record, and in it he gives a list of the bonds, deeds and other documents, closing with the following entry: "T. N. B. package and. envelope;" thus designating the envelope, as well as the bonds, as being subject to the order and control of the complainant.

The facts as thus recited bring this case within the doctrine laid down in the case of *Cline et al.* v. *Jones et al.* 111 Ill. 563. The language used in the latter case is precisely applicable here. "In the case in hand there is that which denotes an intention contrary to that appearing upon the face of the deed, which shows that the deed was not intended to be absolute— that the grantor in it did not intend it to operate immediately. * * * The deed by its purport was absolute, conveying the grantor's entire interest, to operate immediately. But the evidence shows the deed was not intended to be absolute, but to be qualified in its effect,—that it was not intended to convey the grantor's whole interest, but that he (she) meant to have a life estate; * * * that the deed was not intended to operate presently, but only upon the grantor's death. * * * The evidence shows the distinct intention not to create a present estate in the grantee. As, then, there never was any actual delivery of the deed, but the grantor ever kept it in his (her) own possession, and as it was never his (her) intention that the deed should presently take effect and become operative according to its terms, there was no delivery of the instrument as the deed of the grantor, and it was not valid as a deed." * * * As the deed was only to take effect at the grantor's death, it "was a disposition of property of a testa-

mentary character, and invalid, because not in compliance with the Statute of Wills." It follows from these observations that the title never passed out of Mrs. Bovee and was vested in her at the time of her death.

The theory of the bill in this case is that the complainant intended merely to make a testamentary disposition of the property by the execution of the deeds from himself to Dunning and from Dunning to Mrs. Bovee, and that he is now entitled to set aside said deeds as he would be entitled to revoke the will for which they are claimed to stand as a substitute. But we think the evidence shows Mrs. Bovee to have been the owner of the premises in her lifetime. The complainant himself on June 12, 1882, recorded the deeds from himself and wife to Dunning and from Dunning and wife to Mrs. Bovee. This was *prima facie* evidence of a delivery to Mrs. Bovee of the deed from Dunning and wife to her. In addition to this, the complainant, after placing the title in her and putting such title on record, recognized her as the owner of the property and permitted her to deal with it as her own. She accepted the title so conveyed to her by treating the premises as her own and attempting to make a testamentary disposition of them.

The proof in the present case shows that Mrs. Bovee died without children and that her heirs are her husband, the complainant, and her two brothers. The complainant is, therefore, the owner of an undivided one half part of the premises in controversy and is entitled to dower in the other half, while the brothers of the deceased, Mary Louisa Bovee, are the owners of the other half thereof subject to said estate of dower.

The decree of the Superior Court is reversed and the cause is remanded to that court with directions to permit such amendments to the pleadings or such other proceedings as may be necessary to bring before the court all the parties interested in the premises, and for further proceedings in accordance with the views herein expressed.

*Decree reversed.*