*In re* ESTATE OF GUY WILLIAM KEY, Deceased—BETTY RICHEY, Administrator, Petitioner-Appellant, *v.* KENNETH KEY *et al.,* Respondents-Appellees.

(No. 73-408;

Fifth District—September 20, 1974.

George E. Morgan, of Winters, Morgan and Austin, and Kenneth B. Powless, both of Marion, for appellant.

Harris and Lambert, of Marion, for appellees.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Petitioner appeals from a judgment of the trial court dismissing her suit to quiet title to the property on which her father resided prior to his death.

This case involves a petition by the administrator of the estate of Guy William Key to sell real estate and to quiet title thereto by voiding a deed executed by the decedent to his son, Kenneth Key, the respondent-appellee, on account of non-delivery of the deed by the decedent during his lifetime. After a hearing on the petition, the circuit court of Williamson County in a non-jury trial, found that the decedent in his lifetime had executed and delivered to his son, Kenneth Key, a deed to the real estate in question, and that at the time of the decedent's death the real estate was owned and now is owned by the respondent. The court then dismissed the case for want of equity.

The evidence discloses that on December 2, 1968, the decedent called Raymond Miller of Marion, Illinois, a lay person who regularly prepared deeds for persons in Marion, for the purpose of making a deed to the premises where he was living. Miller testified that he was asked to prepare a deed and that after 4 o'clock in the afternoon of the day the decedent called him, he went to the decedent's house with the prepared deed, that Guy Key signed it in his presence and that he then notarized it. He also testified that in his opinion the grantor was of sound mind and able to conduct business at the time.

There is no more evidence concerning the deed until December 1, 1969, when the decedent went to the Bank of Marion and rented a safe deposit box, making his son a deputy with access to the box. Wanda Melvin testified on behalf of the respondent that she was employed at the Bank of Marion and that she knew both Kenneth Key and Guy Key, the decedent; she recognized the deed and she further testified that Guy Key stated that he did not want to keep the deed at home; that he wanted to put it in a safe place and he decided to rent a safe deposit box. "He said he deeded the property to Kenneth and that he wanted Kenneth to have the property. He said that Kenneth was always a good boy and that he deserved it." She said she saw him place the deed in the box and lock it.

Henry Beneke, vice president of the Bank of Marion, testified that the bank records disclosed that Guy Key leased a bank box on December 1, 1969, listing Kenneth Key as a deputy. Kenneth Key as deputy would have access to the box during the lifetime of Guy Key, but not after. The witness stated he knew Guy in his lifetime and knows Kenneth. He talked to Guy about his property at numerous times and Guy told him

that he wanted Kenneth to have his property but he did not give a description.

The respondent, Kenneth Key, was permitted to testify over objection that his father had handed the deed to him in Wanda Melvin's presence, saying, "I'm giving you this place," and then had taken the deed and placed it in the safe deposit box.

Guy Key remained in possession of the land until his death. He did not record the deed. At his death in April of 1970, the deed remained in his safe deposit box. During the few months that he leased the box, Guy Key entered it three times. Kenneth Key never entered it until after his father's death, when, by means of inheritance tax consents received from the Attorney General, he entered it on June 1, 1970, and removed the deed. He recorded it the next day in the recorder's office of Williamson County.

On the evidence recited here, the judge found that there had been a delivery of the deed, and that the land in question belonged to the defendant. Betty Richey, the administratrix, attacks the judgment on two grounds: (1) She argues that the respondent's testimony concerning the words and acts of his father at the Bank of Marion on December 1, 1969, was made inadmissible by section 2 of the Evidence Act (Ill. Rev. Stat., ch. 51, par. 2), and (2) that there was not enough competent evidence introduced to support the finding that there had been a delivery of the deed by Guy Key to Kenneth Key.

After both sides had presented their case, the cause was continued indefinitely so that bank records missing at the time of the hearing could be produced and to allow both sides to submit briefs on the competency of the defendant-appellee to testify on his own behalf. Without notice, the court announced its decision on October 16, 1972.

Appellant first contends that the testimony of Kenneth Key was inadmissible because of section 2 of the Evidence Act (Ill. Rev. Stat., ch. 51, par. 2) which was in effect at the time this case was filed.

■■ In an action instituted by an administratrix on behalf of a decedent's estate, this statute operates to prevent a defending party or other party in interest from testifying for himself unless certain conditions, listed in the statute, are satisfied. For example, when the representative of the deceased person elicits testimony concerning a conversation or transaction between the deceased and a defending party, the defendant becomes competent to testify upon his own motion and in his own behalf. In this case, however, the administratrix introduced no evidence concerning the conversation betwen the deceased grantor and the grantee in the Bank of Marion. All evidence bearing on that encounter was introduced initially by the defendant through his own testimony. The administratrix's

objection that such testimony was incompetent because of the Dead Man's Statute was therefore correct and the defendant's statements about what his father had said and done on that day should have been excluded, Appellee makes several additional arguments to justify the admission of his testimony, none of which have any merit.

■■■ Appellant next contends that, excluding the testimony of Kenneth Key, there was not sufficient evidence to prove delivery of the deed during the lifetime of Guy Key. The law pertaining to the issues involved in this case is clearly stated in *Riegel v. Riegel*, 243 Ill. 626, 630—631:

> "A delivery is essential to render a deed operative and give it force as a conveyance. [Citations.] No particular form or ceremony is necessary to constitute such delivery. It may be by acts without words or words without acts, or both. Anything which clearly manifests the intention of the grantor that the deed shall presently become operative and effectual, that the grantor loses all control over it and that the grantee is to become possessed of the estate, constitutes a sufficient delivery. In the case of a deed which is a voluntary settlement the law presumes much more in favor of a delivery than it does in ordinary cases of deeds of bargain and sale, and this presumption is especially strong when the grantee is an infant. As to such a deed the presumption is in favor of delivery, and the burden of proof is on one claiming adversely to show that there was no delivery. [Citation.] The law has regard to the relationship of the parties and the motives that are presumed to induce the making of such a deed, and casts the burden upon the grantor, or those who claim under him, to show that there was no delivery. [Citation.] A deed made as a voluntary settlement may be effective to vest title in the grantee although it is retained by the grantor in his possession until his death, if other circumstances do not show an intention contrary to that expressed on the face of the deed. The Grantor may deliver the deed either to the grantee or to a stranger for his use, and an acceptance by the grantee will be presumed from the fact that the deed is for his benefit, especially if the grantee is an infant. The test in all cases is the intent with which the act or acts relied upon as equivalent or a substitute for actual delivery were done, and in determining the question whether a deed of voluntary settlement has been delivered, the grantor's intention to vest title in the grantee is regarded as of more importance than the mere manual possession of the deed. [Citations.] If there are other circumstances besides the retention of the deed by the grantor to

show that he did not intend it to operate immediately, the presumption in favor of delivery will be overcome."

A "voluntary settlement" referred to in this language from *Riegel* occurs when a grantor makes a deed to a member of his family for whom the grantor may be expected to provide because of natural affection. *Alexander v. American Bible Society*, 407 Ill. 49, 94 N.E.2d 833.

In the present case, although the deed was in Guy Key's safe deposit box at the time of his death, Kenneth Key had access to it at any time before that time.

"The accessibility or nonaccessibility of the deed to the grantee has in a number of cases apparently been considered a matter of some importance in determining whether there has or has not been a legally sufficient delivery of a deed which has not been manually delivered.

It would seem that if the deed were accessible to the grantee it would be more likely that the grantor intended to effectuate a legal delivery." Annot., 129 A.L.R. 44 (1940), and cases cited therein.

■■ How, then, does the law apply to the facts in this case? From the evidence properly admissible at trial, it appears the conclusion would be justified that Guy Key intended to create a present interest in property in his son by means of the deed. This conclusion, though reasonable, is not necessarily compelled because Guy's statement that he wanted Kenneth to have his property could possibly be construed to mean that Kenneth should have the property from and after Guy's death. In that event, the deed would represent an invalid attempted testamentary disposition. A decision in favor of finding an intent to create a present interest is aided by the presumption mentioned above that arises in the case of a voluntary settlement. This deed, executed in favor of the grantor's son was a voluntary settlement. A presumption of delivery "embodying a presumption of an intent to create a present interest, as an element of delivery" therefore arises. It should be remembered also, that the presumption of delivery arises even though the grantor, or the grantor's estate, had possession of the deed at the death of the grantor. (See *Riegel v. Riegel, supra; Payne v. Henderson*, 340 Ill. 160, 172 N.E. 173.) (That Guy Key had possession of the deed at the time of his death follows from these facts: The safe deposit box was leased in his name only; Kenneth Key, as deputy, was supposed to have access to the box only during Guy's life; when Guy died, the deed remained in the safe deposit box, not legally available to Kenneth.) However, we must also consider the fact that the deed was accessible to Kenneth Key from the time it was placed in Guy Key's safe deposit box up until his death.

To rebut the presumed fact of delivery, the administratrix has two things on which she may rely: First, the deed was not recorded during the lifetime of the grantor. The case of *Bovee v. Hinde,* 135 Ill. 137, 25 N.E. 694, held that a grantor's failure to record a deed kept in his possession could be considered as "at least prima facie evidence that there had been no delivery of it." This contains a modicum of sense, even though Illinois law does not require that a deed be recorded in order to be effective between the grantor and grantee. (*Delfosse v. Delfosse,* 287 Ill. 251, 122 N.E. 484.) If a grantor seriously intends to make a conveyance, he is apt to record a deed he executes and for some reason retains; likewise, if a grantor really desires to convey no interest, it is probable that he will not record the deed. Second, the grantor's retaining possession of the land until his death was inconsistent with the grant contained in the deed. In *Klajbor v. Klajbor,* 406 Ill. 513, the court held that the fact that the grantor remains in possession of the land after a deed is made is an important fact in determining whether a deed for the land, made to a party out of possession, has been delivered.

> "Whether there has been a valid delivery generally presents a mixed question of law and fact. The facts and circumstances of the case must be considered, and from their detail is to be determined the legal question whether such acts and declarations constitute a legal delivery. In some instances, the acts or words of the grantor may so clearly evidence the delivery of a deed that only one conclusion can be reached as to the delivery—namely, that the instrument became an operative conveyance—and in such case delivery may be determined as a matter of law. In most cases, however, delivery is to be inferred from circumstances which by their very nature are equivocal and depend upon the subjective state of mind of the grantor. In such cases delivery becomes a question of fact and cannot be determined as a matter of law. This may be true even where the deed is placed in the actual possession of the grantee. Where the question of delivery is dependent entirely upon intention, it is to be determined from all of the evidence bearing upon the issue, including the conduct of the parties. The questions whether the requisite intent to make delivery existed, and whether the grantor executed his intention to pass title by a sufficient delivery, are both questions of fact and generally for the jury." 23 Am.Jur.2d *Deeds* § 88, at 137 (1965).

Whether or not there was delivery in this case was a question of fact for the trial court.

■■ Had there been no error in the admission of evidence in this case, we would have been compelled to sustain the decision of the trier of the

facts. However, the court did err in the admission of defendant's incompetent testimony. Appellee contends that a trial judge is presumed, on appeal, to have considered only competent evidence. (*McFail v. Braden,* 19 Ill.2d 108; *People ex rel. Hartshorn v. Hartshorn,* 21 Ill.App.2d 91.) For this reason, he says that the judgment in his favor should not be disturbed. While this is the ordinary rule to be followed, it seems clear in this case that the trial judge probably relied on the defendant's incompetent testimony. Under these circumstances the presumption does not apply. 5 C.J.S. *Appeal and Error* § 1564(5), at 1275 (1958).

For the foregoing reasons the judgment of the trial court is reversed and this case is remanded to the circuit court of Williamson County for a new trial.

Reversed and remanded.

CARTER, J., concurs.

Mr. JUSTICE EBERSPACHER specially concurring in part and dissenting in part:

I consider that the case should be reversed, but do not agree that from evidence properly admissible at trial a conclusion would be justified that Guy Key intended to present a present interest in his son by means of the deed.

In *Riegel v. Riegel,* 243 Ill. 626, 631, in addition to the language quoted, the court said:

> "The test in all cases is the intent with which the act or acts relied upon as equivalent or a substitute for actual delivery were done, and in determining the question whether a deed of voluntary settlement has been delivered, the grantor's intention *to vest title in the grantee* is regarded *as of more importance* than the mere manual possession of the deed. * * * If there are other circumstances besides retention of the deed by the grantor to show that he did not intend it to operate immediately, the presumption in favor of delivery will be overcome." (Emphasis supplied.)

Here there is no competent evidence of manual delivery, nor is there any competent evidence that it was intended that title presently vest in the grantee. The most that could be inferred from the evidence is that as his father's deputy of the box the son had a right to access to the box which contained the deed. That right of access was never exercised by the deputy during the lifetime of the father. There are here other circumstances to show the father did not intend the deed to operate immediately; he failed to make a manual delivery and he retained possession of and occupied the premises as his residence. This conduct destroyed what-

ever presumption of delivery that might be raised from the son's right of access to the box, or of delivery of voluntary settlement. Since there is no competent evidence that the father intended title to vest in his son, during the father's lifetime, and the acts of both toward the property and deed were inconsistent with an intention for title to vest during his lifetime, I do not consider that in the absence of error in the admission of evidence, we would have been compelled to sustain the decision of the trier of the fact. In the absence of the erroneously admitted evidence, there is no evidence to support the judgment of the trial court, and we would be compelled to reverse.

Obviously all the evidence of delivery has been presented, and I am unable to conceive of the equity imposed by remanding for a new trial, since the error in every aspect was that made by the trial court at the instance of the son, who had surreptitiously procured the deed after the father's death and recorded it, and thus forced the administrator to bring this action to properly protect the assets of the estate for both the creditors and heirs.

I would reverse and remand for further proceedings.