22 June 2000

NO. 4-99-0719

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Estate of CARL H. WITTMOND, Deceased,

ROBERT FRIEDRICH, as Executor of the Estate of JANE STEWART, Deceased,

Petitioner-Appellant,

v.

CHARLES BURCH, Executor of the Estate of CARL H. WITTMOND, Deceased,

Respondent-Appellee.

)

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Calhoun County

No. 97P6

Honorable

Scott H. Walden,

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In March 1996, Carl H. Wittmond died testate, leaving behind an estate valued at over $8.5 million.  The trial court appointed Charles Burch, Wittmond's nephew, as executor of the estate.  In November 1997, Jane Stewart, Wittmond's companion of 30 years, filed a petition asking the trial court to direct Burch to execute Wittmond's bequests to her.  In February 1998, Burch filed a petition for citation for recovery of assets allegedly held by Stewart.  In August 1999, the court denied Stewart's petition and granted Burch's petition in part.  Later in August 1999, Stewart died.  Her attorney filed a notice of appeal on her behalf, and in October 1999, this court allowed her estate to be substituted as a party.  For simplicity's sake, we will refer to Stewart or her estate simply as Stewart.

Stewart appeals, arguing that (1) a certain parcel of real estate Wittmond bequeathed to her, known as the Smith farm, was part of the estate because Wittmond had never completed delivery of a deed purporting to convey the parcel into an 
inter
 
vivos
 land trust; (2) the contents of a certain safe deposit box belonged to her and not Wittmond; and (3) Wittmond gave her certain other items of personal property prior to his death.  Because we agree with Stewart's first two arguments, we reverse in part and remand.

I. BACKGROUND

Wittmond's 1984 will contained the following bequest to Stewart:

"I give, devise and bequeath unto my friend, JANE STEWART:

1. One Hundred Thousand Dollars ($100,000.00) and

2. My farm in Pike County, Illinois, known as the Smith Farm, *** together with all of the chattels thereon including the contents of the improvements thereon, and the landlord's share of all unharvested crops and benefits pertaining to said farm ***."

Wittmond made several smaller bequests and left the residue of his estate to Burch.

In April 1997, the trial court appointed Burch as executor of Wittmond's estate and ordered him to file an inven

tory within 60 days.  In November 1997, Stewart filed a petition seeking, in relevant part, an order directing Burch to convey the Smith farm and associated chattels to her.  Burch, who had never filed an inventory, filed a response asserting that the Smith farm was not estate property.  In support, Burch attached a copy of an unrecorded warranty deed purporting to convey the Smith farm to the Carrollton Bank and Trust Company (Carrollton Bank) as trustee of the Carl H. Wittmond Land Trust (the land trust).

Stewart's petition was still pending when, in February 1998, Burch filed a petition for a citation for recovery of assets, seeking an order directing Stewart to turn over, in pertinent part, (1) assets from a safety deposit box leased to her at the Bank of Kampsville in Brussels, Illinois, and (2) a set of traveler's checks and a pocket watch.  In March and April 1999, the trial court conducted a hearing on Stewart's and Burch's pending petitions.  The evidence at that hearing showed the following.

A. The Smith Farm

In 1992, Wittmond created the land trust and trans

ferred several pieces of property into the trust via quitclaim deed.  Neither party offered the trust document into evidence at the 1999 hearings, but certain trust provisions were included on the 1992 deed, including the following:

"The interest of each beneficiary under the trust agreement *** is hereby declared to be personal property, and no beneficiary shall have any title or interest, legal or equitable, in or to the real estate as such ***."

Burch testified that he had a 12.5% beneficial interest in the trust and was entitled to all of the trust property upon Wittmond's death.

In January 1996, Burch, acting as Wittmond's attorney, prepared a warranty deed conveying the Smith farm into the land trust.  Wittmond appeared in Burch's law office, executed the deed, and left it in Burch's possession with instructions that it not be recorded.  According to Burch, the newspaper in Pike County reports all recorded land transactions, and Wittmond did not want this deed to be the topic of "public discussion."  Burch subsequently placed the deed in a safety deposit box at a bank.  He never provided the Carrollton bank with the deed but recorded it sometime after this dispute arose.

B. The Safe Deposit Box

Wittmond was vice president of the Bank of Kampsville and a board member.  He also owned the building that housed the bank's Brussels branch.  Wittmond maintained several safe deposit boxes there in his own name.  In 1986, Wittmond took a safe deposit box lease agreement home with him.  Stewart signed the agreement and appointed Wittmond as her deputy, meaning that Wittmond could act as her agent and gain access to the box.  Wittmond then returned the executed lease agreement to the bank.

From 1986 until the time of his death, Wittmond visited the bank on a regular basis and gained access to Stewart's safe deposit box and the various boxes in his own name.  No witness remembered ever seeing Stewart personally gain access to the box while Wittmond was still alive.  Shortly after Wittmond died, Stewart appeared at the bank and emptied the entire contents of the box, consisting of cash, into a paper bag.  She later took that money to a different bank where she deposited part of it and placed the rest in a safe deposit box.

C. The Pocket Watch and Traveler's Checks

Wittmond owned several items of jewelry, including a diamond-studded platinum pocket watch, which he kept in the home he shared with Stewart.  Stewart testified that one day, approxi

mately 1 year to 18 months prior to his death, Wittmond called Stewart into his room, handed her the watch, and said, "You can just take that and have it."  However, Thomas Hardwick, an employee of Wittmond, testified that Wittmond removed the watch from his bedroom only a month or so prior to his death.  Wittmond intended to take the watch with him to a nursing home where he was being admitted.  He left the watch at home only after Hardwick convinced him it would not be secure at the nursing home.

Stewart also testified that Wittmond had given her approximately $2,000 in traveler's checks about 15 years prior to his death.  She attempted to cash the checks after Wittmond died but did not succeed because Wittmond had not endorsed the checks.

D. The Trial Court's Ruling

In August 1999, the trial court issued a written order, finding, in pertinent part, that (1) Wittmond adeemed the bequest of the Smith farm when he conveyed 
the farm into the land trust; (2) the contents of Stewart's safe deposit box were estate assets; and (3) the pocket watch and traveler's checks were estate assets.  This appeal followed. 

II. ANALYSIS

A. The Farm Property

Stewart argues that the trial court erred by concluding that the Smith farm was not available to satisfy Wittmond's specific bequest of the farm to her.  Specifically, she chal

lenges the court's conclusion that Wittmond transferred the farm into the land trust prior to his death.  Stewart contends that no transfer occurred because Wittmond never delivered the deed to the trustee of that trust.  We agree.

A conveyance of real property does not occur merely through the execution of a deed.  The grantor must also deliver the deed, and the grantee must accept it.  
Seibert v. Seibert
, 379 Ill. 470, 477-78, 41 N.E.2d 544, 547 (1942).  Delivery of a deed is essential to complete a conveyance, and although no particular method of delivery is required (
McClugage v. Taylor
, 352 Ill. 550, 557, 186 N.E. 145, 148 (1933)), the grantee must affirmatively show that the grantor's words or conduct evinced an intent to pass title at the time of the purported delivery (
Foster v. Foster
, 273 Ill. App. 3d 106, 110, 652 N.E.2d 350, 353 (1995), citing 
Seibert
, 379 Ill. at 478, 41 N.E.2d at 547).

Citing 
Layton v. Layton
, 5 Ill. 2d 506, 510, 126 N.E.2d 225, 227 (1955), and 
In re Estate of Key
, 22 Ill. App. 3d 265, 268-69, 317 N.E.2d 359, 361-62 (1974), Burch contends that he need not provide evidence of delivery because he is entitled to two presumptions that delivery occurred.  The first applies when the deed is in the physical possession of the grantee.  
Layton
, 5 Ill. 2d at 510, 126 N.E.2d at 227; see also 
Johnson v. Fulk
, 282 Ill. 328, 333, 118 N.E. 706, 707 (1918); 
Wood v. Wood
, 284 Ill. App. 3d 718, 723-24, 672 N.E.2d 385, 389 (1996).  The second applies in cases involving a "voluntary settlement," that is, where the grantee is a close member of the grantor's family for whom the grantor may be expected to provide.  
Estate of Key
, 22 Ill. App. 3d at 270, 317 N.E.2d at 362; see also 
McClugage
, 352 Ill. at 558, 186 N.E. at 149.

Burch relies on each of these exceptions to the general rule requiring affirmative proof of delivery based on his theory that, when a deed conveys property into a land trust, any trust beneficiary may act as a "grantee" even though title vests in the trustee, not the beneficiaries.  Burch cites no authority for this apparently novel proposition, and for the following reasons, we decline to adopt it.

As Stewart points out, the only trust document in the record--the 1992 deed conveying other property into the land trust--specifies that beneficiaries hold no legal or equitable interest in the trust property.  Illinois law not only honors such language in a trust document (
Caleca v. Caleca
, 63 Ill. App. 3d 414, 417, 380 N.E.2d 493, 495 (1978)), but such a provision is an essential part of the definition of a land trust in Illinois (see 765 ILCS 405/1, 415/2, 420/2, 430/1 (West 1996); see also 
Klein v. La Salle National Bank
, 155 Ill. 2d 201, 207, 613 N.E.2d 737, 740 (1993)).

As this court discussed at length in 
Smith v. First National Bank
, 254 Ill. App. 3d 251, 264, 624 N.E.2d 899, 909 (1993), in a land trust, unlike other trusts, the trustee's sole purpose is to take and hold title to the trust 
res
.  Allowing the beneficiaries to perform that function on behalf of the trust would eviscerate the trust entirely.  Thus, no context exists in which a land trust beneficiary may stand in the trustee's shoes for the sake of taking or holding title to trust property.  The transaction passing title occurs exclusively between the grantor/trust settlor and the grantee/trustee.  A beneficiary's possession of the deed is, at best, ambiguous regarding the question of whether the grantor intended title to pass to the trustee.

We note that in many cases, including this one, the grantor/trust settlor is also a beneficiary of the land trust.  Thus, applying Burch's proposed rule would create a presumption of delivery even if the grantor were to retain the deed.  Such a presumption is contrary to the long-standing rule that no deliv

ery is presumed where the grantor retains possession of the deed.  See 
Dunn v. Heasley
, 375 Ill. 43, 48, 30 N.E.2d 628, 631 (1940).

As for Burch's attempt to apply the presumption of delivery that exists in cases of voluntary settlement, we again emphasize that the grantee in this case was the Carrollton Bank, which clearly was not a member of Wittmond's family.  Placing property in a land trust is a transaction in the nature of a traditional, arm's-length property transaction in that a third party, typically a commercial interest (such as the Carrollton Bank in this case), is essential to the transaction.  Thus, we decline to apply any exception to the general rule that the party seeking to enforce the deed must affirmatively prove delivery.

In any event, we doubt the exception pertaining to voluntary settlements would help Burch in this case.  In 
McClugage
, 352 Ill. at 551, 186 N.E. at 146, the transaction in question was between family members but the deed of conveyance was given to a third party.  The supreme court acknowledged that the deed was one of voluntary settlement, giving rise to a "stronger presumption[] in favor of *** delivery than would obtain in case of an ordinary deed of bargain and sale."  
McClugage
, 352 Ill. at 558, 186 N.E. at 149.  Nonetheless, the court applied the following standard of proof:

"Proof that a deed was not in the possession of the grantee at the grantor's death but was then in the possession of a third person makes a 
prima
 
facie
 case that the deed was not delivered.  If there was, in fact, a delivery of the deed to the third person as an escrow, it is incumbent on the grantee to show the terms of the condition on which the deed was to be delivered by the third person to the grantee and that the condition has been complied with."  
McClugage
, 352 Ill. at 557, 186 N.E. at 148.

The court in 
McClugage
 ultimately ruled in favor of the grantees, but only because "[t]he evidence was sufficient to overcome the 
prima
 
facie
 case against delivery made by showing that the deed was not in the possession of the grantees at the death of [a grantor]."  
McClugage
, 352 Ill. at 558, 186 N.E. at 149.

Here, too, the deed of conveyance was in the possession of a third party (Burch) upon the grantor's (Wittmond's) death.  Thus, Burch was required to show the terms and conditions upon which he was to complete delivery on Wittmond's behalf.  However, Burch testified that Wittmond's only instruction was that the deed not be recorded.

Burch nevertheless claims that the record contains "overwhelming evidence *** that the deed was *** delivered *** prior to [Wittmond's] death."  Specifically, Burch claims that delivery was completed because (1) he placed the deed in a lockbox to which Wittmond did not possess a key; and (2) he paid taxes on his share of the 1996 income from the Smith farm.  The first of these items is completely irrelevant to the question presented.  The emphasis should be on Wittmond's words and conduct, not Burch's.  The question is not whether Burch placed the deed in a location to which Wittmond had access (see 
Dunn
, 375 Ill. at 48, 30 N.E.2d at 631), but whether Wittmond left the deed with Burch without the right to reclaim it (see 
Smith v. Pelz
, 384 Ill. 446, 451, 51 N.E.2d 534, 537 (1943)).  No evidence was presented on this point, and any presumption should run against Burch by virtue of his role as Wittmond's fiduciary.

Burch's second rationale is more troubling because it misrepresents the record and the trial court apparently relied on this misrepresentation in reaching its conclusion.  In his brief to this court, Burch states, without citation to the record, that he "own[ed] a 12 1/2% share of the beneficial interest in the land trust *** and paid income taxes from his share of the 1996 income from the land trust, 
including income generated from the Smith farm
."  (Emphasis added.)  The trial court, apparently relying on a similar representation, wrote that "[t]he payment of taxes on the income from the Smith [f]arm is strong evidence of both delivery and acceptance."

The trial court correctly isolated the issue; Burch's payment of income taxes on trust income derived from property other than the Smith farm is meaningless.  However, if his trust income included income from the Smith farm, that would arguably indicate that the trustee (or whoever performed the trust ac

counting on the trustee's behalf) considered the Smith farm to be trust property, potential evidence of both delivery and accep

tance.

The problem with Burch's position, however, is the complete absence of any evidence that the trust income included income from the Smith farm.  Burch's testimony on this point--in its entirety--follows:

"Q. [(by Burch's attorney):  D]o you receive, and is there vested in you as the residuary clause, Carl Wittmond's interest in the [Carrollton Bank] trust?

A. [Burch:]  It is.

Q. In the year 1996 did you pay income tax on your share of the income from the Carl Wittmond land trust?

A. Yes, I did."

We additionally note that even if Burch had provided the evidence that he now claims is contained in the record, its relevance would be arguable, at best.  As earlier stated, Burch's conduct, even if it suggested that he considered himself to have a beneficial interest in the Smith farm income, is of little probative value.  What matters is the conduct of Wittmond and the Carrollton Bank, the parties to the transaction.  Moreover, as Stewart points out, Burch would have paid his 1996 tax obliga

tions after Wittmond's March 1997 death.  Thus, Burch's payment of taxes on income generated by the Smith farm, had it occurred, would have been a self-serving act in support of his claim to the Smith farm.

Accordingly, we conclude that Burch failed to present any competent evidence to show delivery of the deed to the grantee.  The trial court's finding that delivery occurred is against the manifest weight of the evidence.

In so concluding, we note in passing that no evidence of acceptance exists in this record.  The trust document is not in evidence, and no officer from the Carrollton Bank testified.  Acceptance is a relatively simple matter to establish and can even be established by the 
post
 
hoc
 conduct of the grantee, such as appearing in court to defend title.  
Dunn
, 375 Ill. at 49, 30 N.E.2d at 631.  The Carrollton Bank's glaring absence from this proceeding--in which its title to property is in dispute--raises serious questions regarding whether it was ever made aware of the purported conveyance.  See 
Klein
, 155 Ill. 2d at 207, 613 N.E.2d at 740 ("Service of process on the bank trustee [of a land trust], as holder of both equitable and legal title, would be both necessary and appropriate in an 
in
 
rem
 proceeding against the property ***").

B. The Safe Deposit Box

Next, Stewart challenges the trial court's finding that the contents of her safe deposit box at the Bank of Kampsville were estate assets.  Specifically, Stewart argues that the court placed the burden of proof on her to show that the contents of the box were a gift, while the burden of proof should have been on Burch to show that the box contained estate assets.  We agree.

The parties dispute whether ownership of a safe deposit box gives rise to a presumption of title to its contents, a matter of first impression in Illinois.  In support of her position, Stewart directs our attention to decisions from other jurisdictions holding that the contents of a safe deposit box are presumed to belong to the lessee of the box.  
United States v. New England Merchants National Bank
, 465 F. Supp. 83, 87 (D. Mass. 1979); 
In re: Wohleber's Estate
, 320 Pa. 83, 181 A. 479 (1935); 
Hanstein v. Kelly
, 131 N.J. Eq. 132, 24 A.2d 386 (1942).  Burch responds by citing Illinois decisions holding that a joint tenancy in a safe deposit box gives rise to neither a presumption of a gift nor a right of survivorship regarding the property stored in the box.  
In re Estate of Wilson
, 404 Ill. 207, 88 N.E.2d 662 (1949); 
In re Estate of Stahl
, 13 Ill. App. 3d 680, 301 N.E.2d 82 (1973); 
Estate of Kloss
, 57 Ill. App. 2d 118, 207 N.E.2d 92 (1965).

In resolving this issue, we need not decide whether the lessee of a safe deposit box is entitled to a presumption that she owns the contents of the box.  In a proceeding on a citation for recovery of assets, the general rule is that the estate bears the initial burden of establishing a 
prima facie
 case that the decedent owned the assets in question.  
In re Estate of Bickford
, 74 Ill. App. 2d 190, 193, 219 N.E.2d 159, 161 (1966).  Absent some compelling reason to apply a different rule, this general rule should apply, and the trial court erred by placing the burden of proof on Stewart.

Here, Burch did not establish a 
prima
 
facie
 case that Wittmond owned the cash stored in Stewart's safety deposit box.  Burch relies exclusively on the testimony that Wittmond regularly gained access to the box and was seen placing cash in, and removing cash from, the box.  We fail to see the relevance of this testimony to the question presented.  Because Wittmond's sole right of access to the box was in his capacity as Stewart's deputy--that is, her agent--the inference is that Wittmond would gain access to the box exclusively on Stewart's behalf.

Indeed, Burch's evidence, far from establishing a 
prima
 
facie
 case that Wittmond owned the money in question, only raised the following question:  if the money belonged to Wittmond, why was it in Stewart's safe deposit box?  Stewart certainly was not hiding some of Wittmond's money from him in there.  Further, if Wittmond needed a place to put his own money, he had several safe deposit boxes in his own name at the same bank, and the evidence established that the bank would have gladly leased him as many boxes as he required at no charge.  In the event of Stewart's death, Wittmond would continue to have access to his own safe deposit boxes, whereas his access to Stewart's box would halt.  See 755 ILCS 15/1 (1996) (limiting a deputy's access to a safe deposit box after the lessee's death).  The suggestion that Wittmond was placing money of his own in such a restrictive location defies logic.

Accordingly, we conclude that the trial court's finding that the contents of the safe deposit box were assets of the estate was against the manifest weight of the evidence.

C. The Traveler's Checks and Pocket Watch

Last, Stewart argues that the trial court's finding that the traveler's checks and pocket watch were assets of the estate was against the manifest weight of the evidence.  We disagree.

The parties agree that Wittmond originally owned these two items.  The only question is whether he gave them to Stewart as a gift.  Where the executor makes a 
prima facie
 showing that the deceased owned the property in question and the respondent claims ownership as a gift, the burden of proof shifts to the respondent to prove (1) donative intent and (2) absolute and irrevocable delivery of the subject property to the donee by clear, convincing, and unequivocal evidence.  
Hall v. Eaton
, 258 Ill. App. 3d 893, 895, 631 N.E.2d 833, 836 (1994); 
In re Estate of Shanahan
, 59 Ill. App. 3d 269, 273-74, 375 N.E.2d 508, 513 (1978).

Here, Stewart relied on her own testimony to establish that Wittmond gave her the items in question as gifts.  The trial court, as trier of fact, had the opportunity to view the testi

mony and was not obligated to believe Stewart's version of events.  In ruling that Stewart did not sustain her burden of proof, the court noted that (1) Wittmond never endorsed the traveler's checks, as required for Stewart to use them; and (2) even though Stewart occasionally was seen wearing a men's pocket watch around her neck, she did not do so with sufficient fre

quency to convince the court that she owned the watch in ques

tion.  Evidence also showed that Wittmond considered taking the watch with him to the nursing home, long after he purportedly gave it to Stewart.  Such conduct is consistent with neither donative intent nor irrevocable delivery of the watch.

Accordingly, we conclude that the trial court's finding that the watch and traveler's checks were estate property was not against the manifest weight of the evidence.

III. CONCLUSION

For the reasons stated, we reverse the trial court's finding that (1) the Smith farm was not an estate asset and (2) the contents of Stewart's safe deposit box were an estate asset.  We otherwise affirm the trial court's judgment and remand for further proceedings consistent with the views expressed herein.

Affirmed in part and reversed in part; cause remanded.

MYERSCOUGH and KNECHT, JJ., concur.