(No. 33415.—

GEORGE H. LAYTON, Appellee, *vs.* GENEVIEVE LAYTON, Appellant.

*Opinion filed March 24, 1955—Rehearing denied May 16, 1955.*

GEORGE YELLEN, of Chicago, for appellant.

DENENBERG & NOTKIN, of Chicago, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook County which set aside a deed to real estate and ordered partition thereof.

The appellee, George H. Layton, (herein called plaintiff), and the appellant, Genevieve Layton, (herein called defendant), aged 70 and 69 respectively, are husband and wife and have been married for several years. However, since September 19, 1952, they have been separated.

On July 10, 1946, they owned the following described property as joint tenants: "The north 40 feet of the South 58 feet of Lot 2 in Block 6 in Normal School Subdivision of the West half of the Southeast quarter of Section 21, Township 38 North, Range 14, East of the 3rd P.M., commonly known as 6914 South Yale Avenue, Chicago, Cook County, Illinois." On that date, the plaintiff executed a quitclaim deed in which he purported to convey his interest in said property to the defendant. The deed was duly acknowledged, but there is a dispute as to whether it was delivered.

The plaintiff filed the instant suit on April 27, 1953, alleging that there was no delivery of the deed and asking that it be cancelled and the property partitioned. After the defendant's motion to dismiss the complaint was overruled, she filed an answer denying that said deed was not delivered, claiming the plaintiff had no interest in the property, and asking the court to deny him any relief.

The cause was referred to a master in chancery, who heard evidence and afterward submitted a report finding the issues in favor of the plaintiff. The superior court overruled objections to the master's report and entered a decree cancelling the deed and ordering partition and sale of the premises. A freehold being involved, this court has jurisdiction on direct appeal.

The sole question is whether there was a valid delivery of the deed.

The evidence discloses that the parties acquired the property by warranty deed in 1937. They then resided on the premises together until September 19, 1952, at which time the plaintiff left. The defendant, however, continued to live there and was still living on the property at the time of the hearing. The deed, executed on July 10, 1946, was recorded on September 30, 1952, and was in the defendant's possession when the suit was filed.

The plaintiff testified to the following: He executed the deed in question on July 10, 1946, and kept it at his real-estate office. The reason for his making the deed was to protect the property in event one of the salesmen working in his office had an accident with the car which the plaintiff furnished for use in the business. In late 1947 or early 1948, he closed his real-estate office and took the deed, together with other papers from the office, to his home. In the spring of 1948 he had a conversation with his wife about the deed. On this occasion he remembered executing the deed and asked her if she had seen it. His wife replied she had not, and he told her he did not think

it was good anyway and that it was probably destroyed. At no time did he give the deed to his wife. After they were separated on September 19, 1952, he left the State. The plaintiff also denied ever having any conversation with one John E. Kelsey about the deed.

Upon cross-examination, the plaintiff said it was his wife, not he, who said the deed was no good and had been destroyed. He stated he did not have the remotest idea how she knew it was no good, but that when she said this he did not say anything further to her about it. The plaintiff also testified that when he executed the deed he was carrying public liability and property damage insurance on his car.

The defendant's testimony included the following: Her husband brought the deed home in 1946 and gave it to her. He said he was making her a present of it, because he did not want to be bothered with it any more and wanted her to have it. His giving her the deed was a complete surprise to her. She put the deed in a desk in the living room to which the plaintiff had complete access at all times. She saw him on various occasions take items from the desk while the deed was there in open view. The plaintiff left her on September 19, 1952, and thereafter upon advice of her attorney she took the deed from the desk and gave it to a friend, John E. Kelsey, for recording. The defendant denied any conversation about the deed with her husband in the spring of 1948, as related in the plaintiff's testimony.

Three other witnesses testified on behalf of the defendant. The first, John E. Kelsey, stated he was acquainted with both Mr. and Mrs. Layton and had known them for several years. He said he had occasion to see Mrs. Layton at her home in September, 1952. At this time she gave him the deed and asked him to record it. The witness, who was also in the real-estate business, said he conversed with Layton some two months prior to the hearing. At

this conversation the deed was discussed, and the plaintiff told him that he (the plaintiff) had given it to Mrs. Layton several years before.

Mrs. Fannie Poole and Mrs. Mary Wilkes also testified for the defendant. Mrs. Poole said she had known Mr. and Mrs. Layton for over thirty years and often visited them at their home. She referred to an instance in August, 1946, when she visited Mrs. Layton. On this occasion Mrs. Layton took the deed from the desk in the living room and showed it to her. They talked about the deed, and afterward Mrs. Layton placed it back in the desk. Mrs. Wilkes was also a friend of Mr. and Mrs. Layton and a frequent visitor at their home. She visited Mrs. Layton in July, 1946, and was shown the deed.

It was stipulated that at a separate maintenance hearing the plaintiff had testified he still had his real-estate office in 1949.

Finally, in rebuttal, the plaintiff testified he did not tell Kelsey he gave Mrs. Layton the deed, but told him there was such a deed in existence. He further stated that when he made the deed he did not have liability insurance on his car. He denied testifying differently before, but insisted that if he did he did not understand the question.

The defendant is aided by two presumptions. *First*, the possession of a deed by the grantee raises a presumption that the deed was delivered, and only clear and convincing evidence can overcome that presumption. (*Klouda* v. *Pechousek*, 414 Ill. 75, 82-3; *Johnston* v. *Masterson*, 397 Ill. 168, 171-2; *Ehrlich* v. *Tritt*, 316 Ill. 221, 225; *Post* v. *Weaver*, 302 Ill. 169, 171.) *Second*, in cases of voluntary settlement the presumption is in favor of delivery, and the burden is on the grantor, or those claiming through him, to show want of delivery. As so used, voluntary settlement refers to transfers where the grantee is a member of the family or a near relative of the grantor. *Fonda* v. *Miller*, 411 Ill. 74, 80; *Alexander* v. *American Bible*

*Society,* 407 Ill. 49, 57; *Dunn* v. *Heasley,* 375 Ill. 43, 48; *Roche* v. *Roche,* 286 Ill. 336, 346.

The plaintiff's evidence, consisting entirely of his own testimony, is neither clear nor convincing. For example, he testified on direct examination that he executed this deed on July 10, 1946, in order to protect the property in the event of a liability arising from the use of his car. On cross-examination, he stated that he was carrying public liability and property damage insurance on the car at the time he executed the deed. Later, in rebuttal, he denied that he had insurance on the car at that time and even denied he previously stated otherwise.

Going further, the plaintiff said he kept the deed in his real-estate office until late 1947 or early 1948, at which time he closed the office and took the deed, together with other papers, to his home. However, it was stipulated that at a prior hearing he said he had his real-estate office open during all of 1947, 1948 and 1949.

During the spring of 1948, the plaintiff related, he had a conversation with his wife at their home about the deed. He said he asked her if she had seen the deed, and that she replied that she had not. He testified on direct examination that he then told his wife that he did not think the deed was good anyway and that it was probably destroyed, but on cross-examination he said it was his wife, not he, who said the deed was no good and had been destroyed.

Additionally, the plaintiff at first denied ever having had a conversation with John E. Kelsey about the deed. However, after Kelsey testified for the defendant regarding a conversation he had with plaintiff two months previous, the plaintiff returned to admit having had the conversation but to deny ever telling Kelsey he gave the deed to Mrs. Layton.

When the plaintiff's testimony is weighed against the evidence adduced on the defendant's behalf, it is clear that he failed to sustain his burden of proving nondelivery of

512

the deed. For in addition to the defendant's testimony, three others testified for her. All were friends of both the plaintiff and the defendant, and the testimony of each in some substantial manner corroborated the defendant and tended to disprove portions of the plaintiff's testimony.

Since the master found the plaintiff sustained the burden of proving nondelivery of the deed, plaintiff argues that the decree of the court based on this finding should be affirmed. The master's report, while *prima facie* correct, is of an advisory nature only, and a reviewing court must always consider whether the decree rendered is a proper one under the law and the evidence. (*Zilvitis* v. *Szczudlo,* 409 Ill. 252.) We believe the evidence in this record preponderates in favor of the defendant and that the decree of the trial court is manifestly against the weight of the evidence. Accordingly, said decree is reversed and the cause is remanded, with directions to dismiss the case for want of equity.

*Reversed and remanded with directions.*