*In re* ESTATE OF GLENN D. WILLIAMS, Deceased (Karen Kim Fahringer *et al.*, Ex'rs under the Will of Glenn D. Williams, Deceased, Plaintiffs-Appellants, v. Gale R. Williams *et al.*, Defendants-Appellees).

Fifth District No. 5—84—0748

Opinion filed August 13, 1986.

446

Thomas H. Jones, of Wolff & Jones, of Murphysboro, for appellants.

Herbert E. McMeen, of Ridgeway & McMeen, of Murphysboro, for appellees.

PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

On July 1, 1983, plaintiffs, Karen Kim Fahringer and Fonda D. Rodriguez, executors under the will of Glenn D. Williams, deceased, filed a first amended complaint to quiet title in the circuit court of Jackson County against defendants, Gale R. Williams and Helen Williams. In this complaint, plaintiffs, who are Glenn Williams' daughters, requested that the trial court determine that (1) the beneficiaries under Glenn Williams' will were the owners of two tracts of farm land located in Jackson County; and (2) defendants had no ownership in such land, which they claimed by virtue of a deed to the land which was allegedly executed by the decedent and delivered to his twin brother, Gale, in January 1947, but not recorded until January 1983. Following a bench trial, the court found that Gale Williams' possession of a deed to the land in question after Glenn's death raised the presumption that Glenn delivered the deed to Gale with the intent to convey title and that plaintiffs had failed to rebut the presumption by clear and convincing evidence. Accordingly, the trial court entered an order finding in favor of defendants and against plaintiffs. Plaintiffs appeal.

On review, plaintiffs maintain in the alternative that the trial court: (1) applied an improper standard of proof in making its findings concerning the delivery of the deed to Gale; (2) erred in determining that plaintiffs' evidence failed to clearly and convincingly rebut the presumption that Glenn delivered the deed to Gale; and (3) erred in determining that Glenn did not acquire title to the land by adverse possession. We affirm.

The following undisputed evidence is contained in the record. On January 24, 1946, and December 24, 1946, Denton and Bertha Williams, who were the parents of Glenn and Gale Williams, executed warranty deeds conveying to Glenn their interest in a tract of farmland containing approximately 40 acres and an 80-acre tract, all located in Vergennes Township, Jackson County, known respectively as the McClellon tract and the Crow place. On January 2, 1947, Glenn executed a warranty deed conveying this land to Gale. Following Glenn's death on

January 6, 1983, Gale recorded the 1947 deed on January 17, 1983. On that date, Gale also recorded a quitclaim deed conveying his interest in the farmland to himself and his wife, defendant Helen Williams, as joint tenants.

Plaintiffs introduced the following evidence at the bench trial. Howard Wisely, a lifelong resident of Vergennes Township, testified that in approximately 1946 he and Glenn entered into a one-year farm leasing agreement which provided that Mr. Wisely would farm the McClellon tract, receive two-thirds of the farm income, and pay one-third of such income to Glenn.

Raymond Williams, Glenn and Gale Williams' oldest brother, testified as follows. Raymond managed Glenn's farming operations from 1947 to 1980 pursuant to an oral agreement with Glenn. Under this agreement, Raymond farmed the land in question, "made practically all of the decisions" concerning the daily operations of the farm, received two-thirds of the farm income and paid two-thirds of the expenses. During this period, Glenn received one-third of the farm income and paid one-third of such expenses. In a 1977 discussion in which Glenn, Raymond, and their wives were present, Raymond indicated that a certain company had offered to purchase Glenn's farming operations, including the approximately 120-acre tract of farmland, for the sum of $1 million. Glenn refused this offer, stating that he wanted to convey the land to his daughters in such a way that "they can't sell [the farmland] out of the family." When Raymond conveyed a similar purchase offer to Glenn in 1979, Glenn again refused to sell the farmland because he did not want the proceeds to be "mishandled."

Gary Dillinger, an attorney who practiced law in Jackson County during the period from 1972 to 1982, testified that he drafted a will for Glenn in 1982. This will placed the farmland and other assets into a testamentary trust. Pursuant to the provisions of this trust, Glenn's wife would receive the income from the trust during her lifetime and, at her death, the assets of the trust would be distributed to Glenn's children and grandchildren.

Plaintiff Fonda Rodriguez testified that in a 1977 discussion, Glenn informed her that he was going to reject an offer to purchase the farmland which he had received because he planned to equally distribute that land among his four daughters. He also stated that he "worried" that any sale proceeds would be spent in a manner in which he would not approve. In conversations which occurred between 1977 and 1982, Ms. Rodriguez often informed Glenn of her desire to purchase the farmland. Glenn refused to sell the farmland to her, stating that he wanted to divide the land equally among his daughters. However,

Glenn suggested that she could purchase her sisters' interests in the farmland after his death. Glenn also recommended a particular area of the 80-acre tract to Fonda and her husband as a suitable building site for a home. Fonda also testified that she served as Glenn's bookkeeper in 1976 and 1977. During this period, Glenn paid the real estate taxes on the farmland and his share of the farm-related expenses.

Plaintiff Karen Fahringer testified that during the period from September 1982 until January 1983, when she was Glenn's bookkeeper, Glenn received his share of the farm income, paid his share of such expenses, and paid the real estate taxes on the farmland. Glenn informed Karen that he planned to convey the farmland to his daughters.

June Williams, Glenn's wife, testified that although she and Glenn did not live on the farmland, Glenn was the sole owner of that land. June further testified that Raymond Williams actually farmed the land; however, Glenn discussed with Raymond the management decisions concerning the farmland, frequently visited the land to observe the progress of the farming operations, and contracted for the clearing of trees on the Crow place. In addition, Glenn pledged the farmland as collateral to secure various mortgages and leased the mineral interests underlying the farmland.

June Williams corroborated plaintiffs' testimony concerning Glenn's refusal to sell the property because he planned to convey the land to his daughters upon his death. Glenn also told her that he believed that plaintiff Fonda Rodriguez should receive the Crow place because it was the most suitable site for building a home. Mrs. Williams also stated that she had no knowledge of the 1947 deed which Gale recorded following Glenn's death in 1983. Mrs. Williams testified that although she was familiar with Glenn's handwriting, she did not recognize the signature on the 1947 deed which Glenn purportedly had executed.

Plaintiffs introduced into evidence copies of six mortgages and three mineral leases involving the farmland which were signed either by Glenn, individually, or by Glenn and his wife. The most recent mortgage, dated June 22, 1981, pledged the farmland and other real estate to secure an $800,000 indebtedness to Citizens Savings of Belleville. This indebtedness was payable in monthly installments of principal and interest with the balance due and payable on July 1, 2001. Plaintiffs also introduced copies of six financial statements which Glenn had executed and submitted as a part of loan applications to the First National Bank of Ava. In each of these statements, Glenn apparently listed the farmland as one of his assets.

At the close of plaintiffs' evidence, defendants orally moved for a

judgment in their favor pursuant to section 2—1110 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—1110). After hearing the parties' arguments, the trial court denied this motion.

Defendants introduced the following evidence. After identifying the 1947 deed, defendant Gale williams testified that he first learned of that deed's existence on January 2, 1947, and that he had the deed in his possession from that date until he recorded it on January 17, 1983.

Plaintiffs objected to any testimony by Gale concerning the execution and delivery of the 1947 deed, arguing that such testimony was inadmissible under section 8—201 of the Dead Man's Act (Ill. Rev. Stat. 1983, ch. 110, par. 8—201). The trial court sustained plaintiffs' objection.

Gale Williams then identified the six mortgages and the three mineral leases which plaintiffs had introduced into evidence. Gale testified that he had discussed each instrument with Glenn prior to its execution and Glenn had given him the opportunity to prevent the execution of each instrument.

Defendant Helen Williams testified that Gale first informed her of the January 1947 deed shortly after their marriage on December 9, 1947. She also stated that the deed was in defendants' possession until it was recorded in 1983.

Archie Williams, Glenn and Gale Williams' older brother, testified as follows. In a January 1947 conversation with Archie, Glenn stated that he had conveyed his interest in the farmland to Gale. On various occasions between 1947 and 1983, Glenn reminded Archie that the 1947 deed was in Gale's possession. Archie also testified that his son, Kevin, had farmed the land as tenant since approximately 1979 pursuant to an oral leasing agreement with Glenn.

After hearing all of the evidence, the trial court entered an order in favor of defendants which denied the relief sought by plaintiffs. Plaintiffs have perfected an appeal to this court.

■■ ■ Plaintiffs correctly point out that in order to determine the issues raised by the pleadings in this suit to quiet title, it was necessary for the trial court to decide whether Glenn Williams had conveyed his ownership interest in the land to Gale Williams. In order to constitute a valid conveyance of real estate, there must be not only a delivery of a deed by the grantor but also an acceptance by the grantee and it must affirmatively appear that the grantor's intention was that the deed should pass title at the time of delivery and that grantor should lose all control of it. (*Seibert v. Seibert* (1942), 379 Ill. 470, 477-78, 41 N.E.2d 544, 547.) Furthermore, where, as here, a grantee has possession of an unrecorded deed after the death of a grantor, a rebuttable presumption

arises that the deed was delivered with the intent to convey title. This presumption of delivery of a deed with the intent to pass title may be rebutted only by the presentation of clear and convincing evidence. *Watson v. Watson* (1955), 5 Ill. 2d 526, 534, 126 N.E.2d 220, 224; *Layton v. Layton* (1955), 5 Ill. 2d 506, 510, 126 N.E.2d 225, 227.

Plaintiffs concede that they were required to present clear and convincing evidence in this case to rebut the presumption of delivery which was raised by defendant Gale Williams' possession of the 1947 deed to the land which was not recorded until after Glenn's death. However, they maintain on appeal that the trial court's denial of defendants' oral motion for judgment at the close of plaintiffs' evidence (Ill. Rev. Stat. 1983, ch. 110, par. 2—1110) indicates that they had rebutted this presumption by clear and convincing evidence. Plaintiffs further assert that after the presumption was rebutted, the trial court should have considered all of the evidence and applied the preponderance-of-the-evidence standard of proof in determining whether Glenn had delivered the deed to Gale with the intent to convey title. Plaintiffs urge that (1) the trial court improperly applied the clear-and-convincing evidentiary standard in making its finding concerning delivery of the deed at the close of all the evidence; and (2) the application of that standard was improper and constitutes reversible error.

■■ When a defendant moves for judgment under section 2—1110, the trial judge must first determine, as a matter of law, whether plaintiff has established a *prima facie* case. For purposes of section 2—1110 analysis, plaintiff has made out a *prima facie* case if he presents "at least some evidence on every element essential to his cause of action"; and if a *prima facie* case has not been established, the court should, without more, grant the motion and enter judgment in defendant's favor. *Heller v. Jonathan Investments, Inc.* (1986), 113 Ill. 2d 60, 71; *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43, 45.

■■ If, however, the plaintiff has made out a *prima facie* case, the trial judge, in his role as the finder of fact, must then consider the quality of all of the evidence, including any favorable to the defendant, and must pass on the credibility of witnesses, draw reasonable inferences from the testimony, and generally consider the weight of the evidence. This weighing process may result in the negation of some of the evidence necessary to the plaintiff's *prima facie* case, in which event the court should grant the defendant's motion and enter judgment in his favor. On the other hand, if sufficient evidence necessary to establish the plaintiff's *prima facie* case remains following the weighing process, the court should deny the defendant's motion and proceed as if the motion had not been made. *Kokinis v. Kotrich* (1980), 81 Ill. 2d

151, 154-55, 407 N.E.2d 43, 45; *cf. Heller v. Jonathan Investments, Inc.* (1986), 113 Ill. 2d 60.

The parties admitted in the pleadings filed in the instant case that after Glenn Williams' death in January 1983, defendant Gale Williams recorded a 1947 deed which purportedly conveyed Glenn's interest in the farmland to Gale. However, plaintiffs alleged that this deed was invalid and constituted a cloud on Glenn's title to the farmland because Glenn had not delivered the deed to Gale with the intent to convey title.

The allegations contained in the parties' pleadings concerning Gale's possession of the 1947 deed raised a rebuttable presumption that the deed was delivered with the intent to convey title. Accordingly, under the rationale of *Heller* and *Kokinis,* plaintiffs, in order to establish a *prima facie* suit to quiet title, were required to present clear and convincing evidence that Glenn had not delivered the 1947 deed to Gale with the intent to convey title.

 A rebuttable presumption is not evidence but arises as a rule of law or legal conclusion from the facts proved. (*McElroy v. Force* (1967), 38 Ill. 2d 528, 532, 232 N.E.2d 708, 710.) In *Diederich v. Walters* (1976), 65 Ill. 2d 95, 100, 357 N.E.2d 1128, 1130, our supreme court determined that a rebuttable presumption creates a *prima facie* case as to the particular issue in question and thus has the practical effect of requiring the party against whom it operates to come forward with sufficient evidence to rebut the presumption. Where there is insufficient evidence presented to rebut the presumption, the party who has the benefit of the presumption is entitled to judgment as a matter of law. *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 463, 448 N.E.2d 872, 877; *Diederich v. Walters* (1976), 65 Ill. 2d 95, 102-03, 357 N.E.2d 1128, 1131-32.

As we previously have stated, the presumption of delivery of a deed with intent to convey title may be overcome only by the presentation of clear and convincing evidence (*Watson v. Watson* (1955), 5 Ill. 2d 526, 534, 126 N.E.2d 220, 224; *Layton v. Layton* (1955), 5 Ill. 2d 506, 510, 126 N.E.2d 225, 227.) Therefore, if plaintiffs failed to present clear and convincing evidence in their case in chief to rebut the presumption of delivery, a *prima facie* case of delivery with intent to convey title would have been established and the trial court should have granted defendants' motion for judgment. Stated differently, we determine that in order for plaintiffs to have established a *prima facie* case which was sufficient to withstand a section 2—1110 motion for judgment, plaintiffs were required to rebut the presumption of delivery by clear and convincing evidence. (*Heller v. Jonathan Investments, Inc.*

(1986), 113 Ill. 2d 60.) The cases of *Happel v. Mecklenburger* (1981), 101 Ill. App. 3d 107, 427 N.E.2d 974, *McHenry State Bank v. City of McHenry* (1983), 113 Ill. App. 3d 82, 446 N.E.2d 521, and *In re Estate of Wilkening* (1982), 109 Ill. App. 3d 934, 441 N.E.2d 158, support this determination.

■ The pleadings in the case at bar raised the presumption that Glenn Williams delivered the 1947 deed to Gale Williams with the intent to convey title. Accordingly, in order to establish a *prima facie* case, plaintiffs were required to present clear and convincing evidence to rebut the presumption of delivery. *Heller v. Jonathan Investments, Inc.* (1986), 113 Ill. 2d 60; *Happel v. Mecklenburger* (1981), 101 Ill. App. 3d 107, 113, 427 N.E.2d 974, 979.

The following colloquy, which occurred during the argument on defendants' section 2—1110 motion, indicates that the trial judge and the parties understood that defendants would be entitled to a judgment if plaintiffs failed to rebut the presumption of delivery:

"[Defendants' attorney]: [T]here is a presumption that exists that this deed is valid, the delivery did occur by reason [of] the fact that it has been recorded and there's no evidence contrary to that. I think the question before the Court is whether that presumption has been burst by the offering of evidence or testimony that during Glenn Williams' lifetime he farmed, mortgaged and went out and looked at his farm ***.

\* \* \*

[Plaintiffs' Attorney]: [C]ontrary to what [defense counsel] said, it is our position that the Plaintiffs have produced evidence sufficient to overcome the presumption of valid delivery, passing title to the land by [the 1947 deed].

\* \* \*

[Defendants' Attorney]: I think the issue is deliverance, Judge. And delivery of the deed has to be attacked sufficiently to burst the bubble.

[Trial Judge]: I know that.

\* \* \*

I am going to deny your Motion to Dismiss *** I will add this, that there is no question in my mind, based upon—and there doesn't need to be much evidence, as a matter of fact—that the first of the two elements regarding delivery has been satisfied, and that is that Gale Williams did, in fact, have possession of the deed and did record it. I think there is a question regarding the intent at this point."

Furthermore, in the judgment entered at the close of all the evidence,

the trial court stated:

> "The Court tends to agree with [plaintiffs' counsel] when he states, '\*\*\* the decedent thought the land to be his and that he could do with it as he pleased.' \*\*\* Taken as a whole, the evidence and exhibits tend to support the assessment of counsel. But the burden of proof to overcome the presumption of delivery in this case is clear and convincing, the civil equivalent of the criminal burden of proof. The uncommunicated, subjective beliefs of decedent would, I believe, require conjecture and speculation upon the part of the Court. Considering all the testimony and exhibits, the Court finds that [plaintiffs] have failed to meet the heavy burden of proof required to overcome the presumption of delivery by clear and convincing evidence."

It is apparent from the foregoing language that, at the close of all the evidence, the trial judge applied the clear and convincing evidentiary standard in making its finding concerning the delivery of the deed.

■ Plaintiffs reason on appeal that as a basis for the court's decision at the close of all the evidence, they were not required to present clear and convincing evidence in order to rebut the presumption of delivery arising from Gale Williams' possession of the deed in question at the time of the death of his brother Glenn. In this regard, they argue that: (1) the trial court, in ruling on defendant's section 2—1110 motion at the close of plaintiffs' evidence, of necessity found that plaintiffs' evidence established a *prima facie* case by clear and convincing evidence which was sufficient to rebut the presumption of delivery of the 1947 deed which was in Gale Williams' possession on the date of the death of Glenn Williams; and (2) that such finding somehow changed its burden of proof to overcome the presumption of delivery when the court entered its decision at the close of all the evidence from proof by clear and convincing evidence to proof by a preponderance of the evidence. No cases are cited by plaintiff in support of this conclusion; and the record fails to establish that when the trial court denied defendants' section 2—1110 motion, it found that plaintiffs' evidence established a *prima facie* case by clear and convincing evidence. Moreover, had the trial court in fact made such a finding at the section 2—1110 hearing, it is our conclusion that such a finding would have been reversible error. Our examination of the record leads us to the conclusion that both at the close of plaintiffs' evidence and at the close of all the evidence, plaintiffs have failed to rebut the presumption of delivery by clear and convincing evidence.

In their complaint to quiet title, plaintiffs alleged in the alternative that the 1947 deed was invalid and constituted a cloud on Glenn's title

to the farmland because Glenn had reacquired title to that land by adverse possession. Plaintiffs' final contention on appeal is that the trial court erred in determining that Glenn did not reacquire title to the land by adverse possession.

■■ In order to establish title to land by adverse possession under the 20-year statute of limitations specified in section 13—101 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—101), a party must prove that his or her possession of that land was: (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious, and exclusive, and (5) under claim of title inconsistent with that of the true owner, for a period of 20 years. (*Tapley v. Peterson* (1986), 141 Ill. App. 3d 401, 404, 489 N.E.2d 1170, 1171.) Furthermore, the party asserting a claim of adverse possession admits that legal title is in another; and all presumptions in a suit for adverse possession are in favor of the owner of title. In order to rebut such presumptions, the adverse possessor has the burden of proving each of the five elements by strict, clear and unequivocal evidence. *Joiner v. Janssen* (1981), 85 Ill. 2d 74, 81, 421 N.E.2d 170, 174.

Therefore, in the case at bar we must view plaintiffs' allegation that Glenn reacquired title to the farmland by adverse possession upon the basic presumption that defendants owned that land. In order to rebut that presumption, plaintiffs were required to establish the existence of the five elements of adverse possession by clear and unequivocal evidence. In accordance with our analysis concerning the presumption of delivery with intent to convey title, we conclude that plaintiffs failed to present clear and convincing evidence in support of their contentions concerning adverse possession sufficient to rebut the presumption of ownership.

As defendants properly note, the trial court determined that the provisions of section 9 of "An Act concerning conveyances" (Ill. Rev. Stat. 1983, ch. 30, par. 8) barred plaintiffs' claim based on adverse possession. Section 9 provides in part that a grantor of a warranty deed warrants to the grantee quiet and peaceable possession of the premises in question. Defendants urge that: (1) in executing the 1947 warranty deed, Glenn warranted to Gale the quiet and peaceable possession of the farmland, and (2) plaintiffs, who are Glenn's personal representatives, cannot assert a title based on adverse possession because such an assertion amounts to a breach of the warranty of quiet and peaceable possession.

We recognize that it would be incongruous to permit an individual to transfer title to real estate by an instrument in which he covenants to warrant and defend such title and then to permit such individual to

defeat the estate which he has conveyed by claiming that he reacquired title from his grantee by adverse possession. See *Biwer v. Martin* (1920), 294 Ill. 488, 497-98, 128 N.E. 518, 522.

However, it is well settled that the judgment of a trial court will be affirmed on appeal if it is justified in the law for any reason or ground appearing in the record, regardless of whether the particular reasons given by the trial judge, or his specific findings, are correct or sound. (*Thornton v. Williams* (1980), 89 Ill. App. 3d 544, 549, 412 N.E.2d 157, 161.) Accordingly, we need not determine whether the trial court properly concluded that plaintiffs' claim based on adverse possession was barred by provisions of section 9 because we conclude that the trial court properly could have determined that plaintiffs failed to clearly and convincingly establish that Glenn's possession of the land was hostile and under a claim of title inconsistent with that of the true owner.

The mere possession of real estate by a grantor continuing for a 20-year period is not sufficient to establish the holding as being adverse to the grantee since such possession is presumed to be permissive. A grantor must apprise the grantee of his claim of title and this claim must be repugnant to the covenants and the deed in question. (*Wiedrich v. Howard* (1956), 7 Ill. 2d 589, 594, 131 N.E.2d 508, 511.) The record in the instant case does not indicate that Glenn ever apprised Gale that Glenn claimed title to the farmland which was "repugnant" to the terms of the 1947 deed. In fact, Glenn informed Archie Williams on various occasions that Gale possessed a deed to the farmland and Glenn consulted with Gale before pledging the farmland as security for mortgages or executing leases of the minerals underlying the farmland. We conclude, therefore, that the trial court did not err in determining that plaintiffs failed to establish that title to the land in question was reacquired by them and their predecessor in interest by adverse possession.

For the reasons stated herein, we affirm the judgment entered by the circuit court of Jackson County.

Affirmed.

JONES and WELCH, JJ., concur.